**ENTRON, INC., etc., Plaintiff-Appellant,**

v.

**GENERAL CABLEVISION OF PALAT-KA, etc., Defendant-Appellee.**

No. 29187.

United States Court of Appeals,
Fifth Circuit.

Dec. 14, 1970.

J. Kennedy Hutcheson, Clark, Rumph, Franson & Hutcheson, Jacksonville, Fla., for plaintiff-appellant.

John A. DeVault, III, C. Harris Dittmar, Jacksonville, Fla., for defendant-

appellee; Bedell, Bedell, Dittmar, Smith & Zehmer, Jacksonville, Fla., of counsel.

Before TUTTLE, DYER and SIMP-SON, Circuit Judges.

TUTTLE, Circuit Judge:

This is an appeal from a verdict and judgment in favor of the Defendant-Appellee on its counterclaim when it was sued for the balance due on a construction contract wherein the plaintiff agreed to construct, and did construct, a cable television system for the defendant.

It was agreed by the parties in the pre-trial stipulation that the appellant, the plaintiff below, Entron, Inc., was entitled to a judgment in the sum of $27,-505.30, being the balance of the contract payment agreed upon. There remained for trial three grounds of a counterclaim asserted by the defendants. The jury found in favor of the defendant on Count One of the counterclaim, which was based on an implied warranty "that the said system would be well constructed of workmanlike quality and suitable for the purposes for which it was intended," and found damages on this counterclaim to amount to $56,000. The jury found against counterclaim number two, which was based upon a failure of the plaintiff to complete the work in accordance with the terms of the contract, the said contract having contained no penalty clause for failure to perform within the period of sixty days during which the plaintiff undertook to complete the contract. The jury found in favor of the defendant on counterclaim number three, which was based upon alleged false representations as to the plaintiff's knowledge and intent that it could and would complete the contract within the sixty day period, upon which the defendant relied by entering into the contract, and which knowledge or intent did not in truth exist, all to the damage of the defendants. The jury found that such false representation did exist, and returned a verdict on this count in the sum of $21,591.

The issues before the court on appeal are: (1) Did the court properly submit to the jury the question of breach of implied warranty of fitness for use intended where the contract purported to waive all warranties except as expressly stated in the contract, and (2) was there sufficient evidence from which the jury could have found that the plaintiff made a fraudulent misrepresentation to the defendant.

We deal with the questions in reverse order.

■ This case being a diversity action, is, of course, to be decided by Florida substantive law. However, in determining what is the Florida law on a given subject, this court may well be controlled by what we have previously said is the state law in a certain field of jurisprudence where nothing has occurred since the prior decision of this court, either by the passage of a statute, or by a subsequent state court decision to permit a different result. Applying this test, we look to the decision of this court in Bobby Jones Garden Apartments, Inc. v. Suleski, 391 F.2d 172, 177 (5 Cir., 1968), which says:

"The Florida law of actionable misrepresentation was recently capsulated into the following elements in Kutner v. Kalish, Fla.Dist.Ct.App., 1965, 173 So.2d 763, 765 [cert. denied, (Fla.), 183 So.2d 210]:

'(1) a misrepresentation of material fact.

(2) [a] knowledge of the representor of the misrepresentation, or, [b] representations made by the representator without knowledge as to either truth or falsity, or, [c] representations made under circumstances in which the representor ought to have known, if he did not know, of the falsity thereof,

(3) an intention that the representation induce another to act on it, and

(4) resulting injury to the party acting in justifiable reliance on the representation.' "

We now look at the facts in this case, which are substantially undisputed so far as they deal with the element of actionable misrepresentation. The contract, entered into after repeated statements by Bernard Karlen, Vice President of General Cablevision, that his company was strictly limited to the requirement that it have the job completed within sixty days, contained an express promise that Entron would construct and turn over a system on a "turnkey" basis within sixty days after beginning construction; the contract was not only not turned over within sixty days but was not offered for final acceptance until approximately three times that long, some 175 days after the contract was signed. Even this tender was not accepted by General Cablevision, because the system failed to operate properly, and it was not until nearly three months later that the system began operating completely satisfactorily; substantial damage accrued to General Cablevision as a result of this failure of Entron to live up to its promise of performance, since General Cablevision opened offices and started selling service to prospective customers on the assumption that the sixty day completion would be carried out; in response to questions asked by defendant of the president of Entron that he name several comparable jobs performed by Entron, several were named, including one in Laurinburg, North Carolina; the Laurinburg job required four or five calendar months for completion; the president of Entron testified that as far as he could recall this was the shortest time Entron had ever required to build and install a CATV System of comparable type.

It has been said that "the state of a man's mind is as much a fact as the state of his digestion." If this be true, if at the time a seller makes a statement as to what he proposes to do for the future when the true state of his mind would disclose that he knows he cannot do so, this is a misrepresentation of a material fact. The same would be true if the seller represents what he proposes to do at a time when he is either without knowledge as to his ability to perform or if he represents what he proposes to do under circumstances in which he should have known, but may not have known, of his inability to carry out his promise. These standards we derive from what has been quoted above as the Florida law. Here, also, there is no contention made by the appellant that whatever representations were made as to the sixty-day performance were not made for the purpose of inducing General Cablevision to act on them. Moreover, it is clear that General Cablevision did rely on the representation and this reliance resulted in injury.

Although not expressly argued on behalf of the appellee, we consider the very gross failure to perform the contract, even if standing alone, as strong evidence of the inability of the plaintiff-appellant to do what it promised to do—that is to complete the system within sixty days. Assuming, as we should, that when parties enter into a solemn written obligation to perform a contract involving a reasonably complicated mechanism and system as to which the promisor is presumed to be an expert, this should of itself be taken to be a holding out of a belief that the undertaking could be carried out, the failure of the promisor to carry out his agreement fully and adequately within anything like the terms of the formal contract is some evidence that the party did not intend to do it in the first place. To this there is to be added the testimony of the president of the appellant that the company had never performed a job of comparable size in a period of even twice as many days as the sixty-day period contemplated in this contract. We think this is sufficient to permit the jury to find all of the essential elements for actionable misrepresentation.

To be sure, the appellant points to testimony by Mr. Karlen, who at one point testified that he had thought of undertaking to do the job on behalf of General Cablevision itself rather than contracting it out, that he believed he could have done it within sixty days and

that "so did Entron." Appellant contends that this statement by Mr. Karlen that Entron believed it could construct the system in the time allotted negates any possibility of a jury's finding that the representation made by Entron that it would perform in sixty days amount to actionable misrepresentation. We think that the jury could find that the language used by Mr. Karlen, since he could not possibly have known what Entron "felt", went only so far as to indicate that the job could be done in that time, but it did not go so far as to exclude the likelihood that the Entron representatives made the promise to do so without any real intention of doing it, rather following their own schedule and convenience, and knowing that this is what they would do from the beginning.

When we consider this fact, together with testimony of the president of Entron that although there were five or six "comparable" jobs performed by Entron, no one of them had been completed in less than five months, which it required at Laurinburg, North Carolina, we conclude that there was more than substantial evidence to submit to the jury on this issue.

The appellant does not complain of the charge to the jury with respect to the misrepresentation count of the complaint, but complains only that there was not sufficient evidence for the issue to be submitted. Appellant contends that the rule in Florida is that fraud can be established only by "clear and convincing evidence," rather than a mere "preponderance of the evidence," citing 14 Fla. Jurisprudence, Fraud and Deceit, Section 83, and Thomas v. Pennsylvania Threshermen and Farmers' Mutual Insurance Company, Fla.App., 167 So.2d 10.

■ This court has decided that in the ordinary diversity case "it is well settled in this Circuit that in diversity cases federal courts apply a federal rather than a state test for the sufficiency of evidence to create a jury question." Boeing Co. v. Shipman, 5 Cir., 1969, 411 F.2d 365. See also Planters Manufacturing Co. v. Protection Mutual Insurance Company, 380 F.2d 869, 5 Cir., 1967. Appellant does not discuss this question, other than to point to the Florida rule stated above. Presumably, the basis upon which appellant would contend that the Florida rather than the federal standard expounded in *Boeing* should apply, would be that as to the question of proving actionable misrepresentation, the Florida standard must be looked to because the standard of proof is an element of the actionable conduct.

Appellee does not undertake to discuss whether the federal or Florida standard is to apply other than to state that the rule set down by this court in *Boeing* is the proper rule to be applied in this case, but then stating that Entron's contention is incorrect and that, in fact, in Florida an action such as the one here proceeded on is more nearly akin to a common law action for deceit, rather than a suit for equitable relief based on fraud. In the action for deceit, appellee contends that, as stated in Matthews v. Matthews (Fla. App.2d Dist. 1961) 133 So.2d 91, at page 94, "the classic tort of deceit at common law, requires proof by only a 'preponderance of the evidence.'"

We need not decide whether the standard to be applied here is strictly a standard of the quantum of evidence to be proved in a federal diversity case, as was true in *Boeing, supra,* or whether the standard is one to be applied because in an action for deceit the "cause of action" cannot be established without proof by "clear and convincing evidence," for we hold that under either standard there was sufficient evidence to have the issue submitted to the jury.

There remains the question as to the jury's verdict on count one charging that the CATV system constructed by Entron and sold to General Cablevision was not suitable and reasonably fit for the purposes for which it was intended, thus violating an implied warranty of fitness. The contract between the parties provides in paragraph 9(d) thereof, "Except for the express warranties set forth

herein, Entron makes no warranty of any kind, express or implied and all warranties of merchantability, fitness for particular purpose, and other warranties of whatever kind are hereby disclaimed by Entron and excluded."

██ Appellant contends that this agreement in the contract precludes the possibility of a recovery on an implied warranty of fitness, because, although appellant concedes that otherwise the uniform commercial code, Section 672.2–102, Fla.Statutes, F.S.A., would apply, the provisions of the code do not apply here because what was called for by this contract was not a "sale." The uniform commercial code provides, "Words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranties shall be construed wherever reasonable as consistent with each other; but subject to the provisions of this chapter on parol or extrinsic evidence (672.2–202) negation or limitation is inoperative to the extent that such construction is unreasonable.

"(2) Subject to subsection 3, to exclude or modify the implied warranty of merchantability or any part of it, the language must mention merchantability and in case of a writing must be *conspicuous*, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and *conspicuous*. Language to exclude all warranties of fitness is sufficient if it states, for example, that 'there are no warranties which extend beyond the description on the face hereof.'" (Emphasis added.)

Fla.Stat. § 672.2–316, F.S.A. Although, of course, the language is not necessarily conclusive in the matter, it is significant to note that the first paragraph of the contract designated General Cablevision of Palatka as the "buyer." [1]

Also, it is significant that the contract provided that "title and all incidence of title and ownership shall be and remain with Entron until completion of the work or any portion thereof required hereunder. * * * It is the intention of the parties that all equipment and material used hereunder shall be and remain *personal property*, at least until such time as acceptance of and final payment for the entire system is made." (Emphasis added.) It seems clear that this contract for the sale of a system, many of the component parts of which were to be manufactured by Entron, was sufficiently a sale of goods as to bring it within the contemplation of the uniform commercial code.

██ Since the disclaimer of warranties must be judged by the provisions of the uniform commercial code, it becomes obvious that the requirements of that code were not complied with with respect to the *conspicuousness* of the language purporting to disclaim an implied warranty.[2]

In Boeing Airplane Co. v. O'Malley, 8 Cir. 1964, 329 F.2d 585, the court said:

"While the implied warranty could under the 1959 statute be disclaimed by the form of language used in Article VI of the contract, the 'writing must be conspicuous.' Here it is not so. It is merely in the same color and

---

I. This paragraph states: "(1),Entron shall upon the terms and conditions hereinafter set forth construct and *sell* to the buyer, and the buyer shall buy from Entron, a community antenna · television system [herein called the System] located in or in or about the city of Palatka, Florida, and a party of the County of Putnam, Florida." (Emphasis added.) Then, throughout the contract General Cablevision is spoken of as the "buyer."

2. The Florida statute defines the word "conspicuous" as follows: " 'Conspicu-

ous': A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals (as NON–NEGOTIABLE BILL OF LADING)˙is conspicuous. Language in the body of a form is 'conspicuous' if it is in larger or other contrasting type or color. But in a telegram any stated term is 'conspicuous.' Whether a term or clause is 'conspicuous' or not is for decision by the court." Fla.Stat. § 671.1–201(10), F.S.A.

size of other type used for the other provisions and under the statutory definition of 'conspicuous' fails of its purpose." 329 F.2d 585, 593.

Appellee contends that even though this contract did not fall within the contemplation of the uniform commercial code, by reason of it being a service rather than a selling contract, the purported disclaimer would nevertheless be void in Florida under the Florida Supreme Court decision of Manheim v. Ford Motor Co., Fla.1967, 201 So.2d 440. We conclude that under either of the two prongs of the dilemma in which the appellant finds itself, the trial court correctly submitted to the jury the question of damages resulting from the existence of an implied warranty of fitness for the use intended.

The judgment of the trial court is affirmed.