258 So.2d 11 (1972)
David GABLE, Appellant,
v.
David SILVER et al., Appellees.
No. 70-668.
District Court of Appeal of Florida, Fourth District.
January 14, 1972.
Rehearing Denied March 3, 1972.
Question Certified March 3, 1972.
*12 Robert M. Sturrup, of Sturrup & Della-Donna, Fort Lauderdale, for appellant.
Merle Litman, of Litman & Muchnick, Hollywood, for appellees.
WALDEN, Judge.
This suit concerns the dissatisfactions of some condominium apartment owners (plaintiffs) with their air conditioning system and their efforts to obtain relief from the builder (defendant). Final judgment awarded plaintiffs damages. Defendant appeals. We affirm.
Proceeding inversely, Points II and III deal with damages and their cause. We have examined them and find no merit or need for discussion.
Point I contains the gravamen of the appeal and was phrased thusly by appellant:
The court erred in holding that there was an implied warranty of fitness that attached to the air conditioning system which was an integral part of the realty.
The defendant, David Gable, is the builder and developer of the twin condominiums. He sub-contracted for the construction of an air conditioning and heating system for the condominiums, which included supply wells.
The condominiums were occupied in late 1966 and early 1967. Almost from the inception the air conditioning system did not work properly. Numerous service calls were made to correct the various complaints without permanent success. The plaintiffs were advised their difficulties with the air conditioning were the result of improper drilling of the wells and improper equipment installation in connection therewith.
The events leading up to this law suit culminated in January of 1968. The entire air conditioning system had malfunctioned as a result of the pump losing its prime.
The condominium owners were told by defendant that the condition could be corrected at a cost to them of $550 (the one year express warranty had expired). Refusing to be swayed again by the defendant's promises, plaintiffs declined the offer and had another engineering company inspect the system and contracted with that company for repairs totalling $5,144. They then sued the defendant to recover their damages and received a judgment of $5,869.11, plus costs.
The air conditioning system had a one year express warranty. All parties acknowledge that this express warranty is not in issue or applicable here. Nevertheless, this express warranty will be examined. It was entered into on March 1, 1966. The warranty said "All equipment, materials and workmanship installed by seller shall be guaranteed for a period of one year, unless otherwise specified... ."
The examination of the main question on appeal, concerning the impositions of implied warranties to real estate, a question of first impression in Florida, must first be based on findings that 1) the express warranty *13 did not render the problem moot and 2) the air conditioning system was in fact realty.
1. We believe that the express warranty present in this cause in no way precluded, or is inconsistent with, the imposition of an implied warranty of fitness and merchantability.
In arriving at this conclusion we first examined the effect of an express disclaimer against implied warranties, a situation not present here, but an extreme necessary to present in fortifying our conclusion. Typically, such a disclaimer attached to an express warranty would say it was expressly in lieu of all other implied and express warranties.
Aside from an anomaly involving agricultural seed, Corneli Seed Co. v. Ferguson, Fla. 1953, 64 So.2d 162, Florida's first two cases in this area declined to impose an implied warranty and gave full effect to the express disclaimer of implied warranties present in the express warranty. Rozen v. Chrysler Corporation, Fla.App. 1962, 142 So.2d 735; Friedman v. Ford Motor Company, Fla.App. 1965, 179 So.2d 371.
Then came the landmark case of Manheim v. Ford Motor Company, Fla. 1967, 201 So.2d 440. Manheim, the car buyer, sued Ford for breach of implied warranty. There was an express warranty, containing a disclaimer of implied warranties, between Ford and its dealer. The court held that the express warranty between Ford and its dealer did not preclude recovery on an implied warranty theory between the purchaser and Ford.
Manheim spawned a disciple and a protagonist. The disciple was Crown v. Cecil Holland Ford, Inc., Fla.App. 1968, 207 So.2d 67. In Crown the dealer, in addition to the manufacturer, had given an express warranty with a disclaimer. The court held Manheim nonetheless controlled and an action for breach of implied warranty was not precluded.
The protagonist was Desandolo v. F. & C. Tractor and Equipment Co., Fla.App. 1968, 211 So.2d 576. Desandolo, without discussing Crown, decided that an express disclaimer in an express warranty between buyer and seller is valid and precluded liability on the basis of an implied warranty of fitness or merchantability. This result was arrived at by distinguishing and limiting Manheim to situations involving warranties between the dealer and the manufacturer. Desandolo also said its facts were not compelling enough to merit the voiding of the disclaimer for public policy reasons as was done in Henningsen v. Bloomfield Motors, Inc., 1960, 32 N.J. 358, 161 A.2d 69.
Since Florida's adoption of the U.C.C.[1] several cases have continued to apply, more or less, Florida's pre-code law, or at least Manheim, on the effect of disclaimers. See Ford Motor Company v. Pittman, Fla.App. 1969, 227 So.2d 246, and Entron, Inc. v. General Cablevision of Palatka, 5 Cir.1970, 435 F.2d 995. Entron used a blend. It discusses conspicuousness, found it lacking on their facts, then held that, notwithstanding the U.C.C., disclaimer of implied warranties was void in Florida because of Manheim.
Other cases have indicated that the U.C.C. provisions concerning conspicuousness are to be taken quite literally and disclaimers will be restrictively upheld.[2]
*14 It should be noted that the U.C.C. provision mentioned has no effect here since there was no disclaimer.[3] The U.C.C. and the Manheim line of cases would indicate that Florida has a liberal policy of allowing litigants their day in court on suits involving breaches of implied warranty of fitness and merchantability. Such a policy becomes important to our central issue.
Since there was no express disclaimer, should we then imply one, due to the inclusive wording used in the contract? We think this would be an entirely artificial way to dispose of this cause. Further, it has consistently been held that an express warranty is not inconsistent with, does not negate or exclude implied warranties of fitness and merchantability. They may easily coexist.[4] We hold such a coexistence lies here.
2. Having preliminarily decided that a suit for breach of implied warranty is proper, we must lay the groundwork for our conclusion that implied warranties apply to real estate, by characterizing the air conditioning system as realty.
Air conditioners can either be fixtures, if they are removable, or realty, if they are fixed. See 43 A.L.R.2d 1378, Anno., Air Conditioning Plant, equipment, apparatus, or the like as fixtures. The main test, according to the annotation, is the intention to make the article a permanent part of the freehold. Another test is if the fixture is removable without damage to the premises.
Florida, in Ridgefield Investors, Inc. v. Holloway, Fla. 1954, 75 So.2d 208, held air conditioners to be fixtures. There the air conditioners could be removed without damage to the premises. Other cases have held that it is a fact question. See Kornblum v. Henry E. Mangels Company, Fla. App. 1964, 167 So.2d 16, and Corbett v. Appliance Buyers Credit Corp., Fla.App. 1965, 172 So.2d 257. The fact that the instant system was attached and immovable (for example, the supply wells), plus the trial court's factual classification of the system as realty, would eliminate Ridgefield as controlling here.
In Voight v. Ott, 1959, 86 Ariz. 128, 341 P.2d 923, it was held that air conditioning systems in general are a part of realty.
Using and interpolating from the above sources, we conclude the instant air conditioning system was realty.
3. We have arrived at our focal point. This action for breach of implied warranty is properly maintained and it involves realty.
The general and still the majority rule is that implied warranties do not apply to realty. See 25 A.L.R.3d 383, Anno., Defective Home, Vendor's liability. This general rule is fast being eroded. At last count, fourteen states have adopted the modern rule, which extends implied warranties to realty, as later catalogued. Only three states who have recently considered this problem have declined to adopt the modern rule.
Of the states recently adopting the modern rule (since 1963) several provided reasoning and historical background difficult to improve on.
In Bethlahmy v. Bechtel, 1966, 91 Idaho 55, 415 P.2d 698, the court said:
"The foregoing decisions ... show the trend of judicial opinion is to invoke the doctrine of implied warranty *15 of fitness in cases involving sales of new houses by the builder. The old rule of caveat emptor does not satisfy the demands of justice in such cases. The purchase of a home is not an everyday transaction for the average family, and in many instances is the most important transaction of a lifetime. To apply the rule of caveat emptor ... in favor of a builder who is daily engaged in the business of building and selling houses, is manifestly a denial of justice. .. ." (Emphasis supplied)
South Dakota agreed in Waggoner v. Midwestern Development, Inc., 1967, 83 S.D. 57, 154 N.W.2d 803:
"It may be assumed for the purpose of decision that the doctrine of caveat emptor applies generally to sales of real property ... There is, however, a notable lack of harmony in decisions as to the existence of an implied warranty of fitness upon the sale of a new house or one to be erected or in the course of erection.
"In the 1963 edition of Williston on Contracts, . .. The author says:
`Over the years, the number of cases which apply the rule of caveat emptor strictly appears to be diminishing, while there is a distinct tendency to depart therefrom, either by way of interpretation, or exception, or by simply refusing to adhere to the rule where it would work injustice... . It would be much better if this enlightened approach were generally adopted with respect to the sale of new houses for it would tend to discourage much of the sloppy work and jerry-building that has become perceptible over the years.' Williston on Contracts, 3rd. Ed., § 926A.
* * * * * *
"We conclude that where in the sale of a new house the vendor is also a builder of houses for sale there is an implied warranty of reasonable workmanship and habitability surviving the delivery of deed. The builder is not required to construct a perfect house and in determining whether a house is defective the test is reasonableness and not perfection."
Texas joined the trend in Humber v. Morton, Tex. 1968, 426 S.W.2d 554, by saying,
"If at one time in Texas the rule of caveat emptor had application to the sale of a new house by a vendor-builder, that time is now past. The decisions and legal writings herein referred to afford numerous examples and situations illustrating the harshness and injustice of the rule when applied to the sale of new houses by a builder-vendor... . Obviously, the ordinary purchaser is not in a position to ascertain when there is a defect in a chimney flue, or vent of a heating apparatus, or whether the plumbing work covered by a concrete slab foundation is faulty.
* * * * * *

"The caveat emptor rule as applied to new houses is an anachronism patently out of harmony with modern home buying practices. It does a disservice not only to the ordinary prudent purchaser but to the industry itself by lending encouragement to the unscrupulous, fly-by-night operator and purveyor of shoddy work." (Emphasis supplied.)
Perhaps the most famous and most often quoted case in this area is Wawak v. Stewart, 1970, 247 Ark. 1093, 449 S.W.2d 922. This case is specially important to us because it involved heating and air conditioning malfunctioning. In applying implied warranty to the sale of new homes by the builder-vendor, the court wrote a very scholarly and exhaustive opinion, parts of which are quoted as follows:
"... Both the rapidity and the unanimity with which the courts have recently moved away from the harsh doctrine of caveat emptor in the sale of new houses are amazing, ...

*16 "... One who bought a chattel as simple as a walking stick or a kitchen mop was entitled to get his money back if the article was not of merchantable quality. But the purchaser of a $50,000 home ordinarily had no remedy even if the foundation proved to be so defective that the structure collapsed into a heap of rubble.
* * * * * *
"In the past decade six states have recognized an implied warranty  of inhabitability, sound workmanship, or proper construction  in the sale of new houses by vendors who also built the structures.... The near unanimity of the judges in those cases is noteworthy... .
"As might be expected, we have been presented with the timeworn, threadbare argument that a court is legislating whenever it modifies common-law rules to achieve justice in the light of modern economic and technological advances. That same argument was doubtless made in a famous case that parallels this one: MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050, Ann.Cas. 1916C, 440, L.R.A. 1916F, 696 (1916)... . Yet the doctrine of the MacPherson case is now accepted as commonplace throughout the nation. We have no doubt that the modification of the rule of caveat emptor that we are now considering will be accepted with like unanimity within a few years."
Two jurisdictions have gone an additional step. Hawaii has taken the reasoning applying implied warranties to homes and adopted it to leases. Hawaii finds an implied warranty of fitness in a leasehold, Lemle v. Breeden, Hawaii 1969, 462 P.2d 470, both furnished and unfurnished, Lund v. MacArthur, Hawaii 1969, 462 P.2d 482. The District of Columbia has followed Hawaii in Javins v. First National Realty Corporation, 1970, 138 U.S.App.D.C. 369, 428 F.2d 1071.
There have been numerous other decisions along the same lines as in Wawak v. Stewart, supra.[5] It should also be noted that all these cases have been decided within the past few years.
The picture has not been totally clear, however. Both of our neighboring states have balked at the modern rule: Livingston v. Bedford, 1969, 284 Ala. 323, 224 So.2d 873; and Amos v. McDonald, 1971, 123 Ga. App. 509, 181 S.E.2d 515. In Livingston the court affirmed an old decision holding that there was no implied warranty that improvements located on real property sold were constructed in good and workmanlike manner. In Amos the court said that the doctrine of caveat emptor applied if there is no express warranty or if fraud is not involved. There was no cause of action stated under existing Georgia law for implied warranty for real property.
In Allen v. Wilkinson, 1968, 250 Md. 395, 243 A.2d 515, the Maryland court declined to adopt the modern rule with the following language:
"... We think that while there is some merit in the newer view that *17 sales of some types of realty should be covered by an implied warranty, similar to the warranty implied in the case of many sales of goods and personal property today, that such a change should be made by the legislature rather than by the courts of this state."
While the trend is clear, Florida has not before had the opportunity to express itself on the question of the imposition of implied warranties to realty. It has expressed a policy of protection for the novice home buyer. See Ramel v. Chasebrook Construction Company, Fla.App. 1962, 135 So.2d 876, where a home buyer was awarded damages against the builder because his house was built on muck, without the necessary pilings. The builder had vaguely warranted the house to be of "good construction."
Recovery in Ramel was based on fraud and deceit and not warranties of any kind. It is, therefore, precedent only for its result.
The University of Florida Law Review, Vol. 23, p. 626, 1971, summarizes rather succinctly the Florida rule,
"... Florida courts have not as yet reached the question of implied warranties in the sale of new homes . .
The question remains in Florida whether caveat emptor will be extended to foreclose implied warranties in the sale of new homes.
"It has been contended that adoption of the remedy of implied warranty would adversely affect the stability of the new house market. The use of implied warranties with the respect to the sale of new chattels, however, has not had the effect of destroying the stability of the market place for chattels, . . Moreover, under the theory of implied warranty the purchaser would always have the burden of proving the house was defective when sold and could only recover if he were the first occupant of a new house.
"Although the theory of implied warranty should not drastically affect the position of the legitimate builder-vendor, the doctrine could be very effective in reducing the number of those undesirables within the industry who have no intention of standing behind the quality of their work... . It should also be noted that the legitimate builder-vendor is much more capable of distributing the cost of his mistakes than is the innocent home buyer.
"Undoubtedly, the law regarding the liability of a builder-vendor of new houses is changing. The above cases indicate a growing trend away from caveat emptor and toward the theory of implied warranty. The movement brings the law much closer to the realities of the market for new homes than does the anachronistic maxim of caveat emptor. `The law should be based on current concepts of what is right and just and the judiciary should be alert to the never-ending need for keeping its common law principles abreast of the times. Ancient distinctions which make no sense in today's society and tend to discredit the law should be readily rejected.'"
Before concluding, one more side-step is necessary. We have previously dismissed the U.C.C. from the instant action in regard to disclaimers. We also conclude that the U.C.C. provisions concerning implied warranties of merchantability and fitness are not applicable,[6] even if the time sequence differed. Defendant, the seller, was not a merchant[7] because, among other *18 reasons, he was not dealing in goods.[8] Therefore, defendant does not come under the U.C.C. umbrella and the decision we reach is not confined or limited by any statutory strictures.
The instant case deals with the first purchasers of condominium homes. We ponder, but do not decide, what result would occur if more remote purchasers were involved. We recognize that liability must have an end but question the creation of any artificial limits of either time or remoteness to the original purchaser.[9] We also realize and memorialize that our facts limit our decision to the sale of new homes or condominiums.
We are convinced, based upon present day trends, logic, and practical justice in realty dealings, that of the two possible rulings, the one we here announce is highly preferable. Thus, we flatly declare that the implied warranties of fitness and merchantability extend to the purchase of new condominiums in Florida from builders.
Affirmed.
REED, C.J., and CROSS, J., concur.

On Petition for Rehearing
Ordered that appellant's petition for rehearing, filed January 25, 1972, is hereby denied; further,
Ordered that the opinion of the court filed January 14, 1972, is hereby certified to be one which passes upon a question of question of great public interest. F.A.R. 4.5(c) (6); further,
Ordered that the question certified is as as follows:
"Do implied warranties of fitness and merchantability extend to the purchasers of new condominium homes from builder-sellers."
NOTES
[1] Sec. 672.316(2), F.S. 1969, F.S.A., "Subject to subsection (3), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that `There are no warranties which extend beyond the description on the face hereof.'" (Emphasis supplied.)
[2] Sutter v. St. Clair Motors, Inc., 1963, 44 Ill. App.2d 318, 194 N.E.2d 674; 17 A.L.R.3d 1010, Anno. U.C.C., Sales.
[3] The U.C.C. is also inapplicable because of the timing of the contract and because it is unlikely the defendant here would qualify as a merchant. Ch. 672.104, F.S. 1969, F.S.A.; and whether the condominiums were goods. Ch. 672.105, F.S. 1969, F.S.A.
[4] Koellmer v. Chrysler Motors Corporation, 1970, 6 Conn.Cir. 478, 276 A.2d 807; Sperry Rand Corporation v. Industrial Supply Corporation, 5 Cir.1964, 337 F.2d 363; Safeway Stores, Inc. v. L.D. Schreiber Cheese Company, W.D. Mo., 1971, 326 F. Supp. 504; Henningsen v. Bloomfield Motors, supra.
[5] Colorado  Glisan v. Smolenske, 1963, 153 Colo. 274, 387 P.2d 260; Carpenter v. Donohoe, 1964, 154 Colo. 78, 388 P.2d 399; Shiffers v. Cunningham Shepherd Builders Co., Colo. App. 1970, 28 Colo. App. 29, 470 P.2d 593.

Connecticut  Vernali v. Centrella, 1970, 28 Conn.Sup. 476, 266 A.2d 200.
Idaho  Shrives v. Talbot, 1966, 91 Idaho 338, 421 P.2d 133.
Indiana  Theis v. Heuer, Ind. App. 1971, 270 N.E.2d 764.
Kentucky  Crawley v. Terhune, Ky.App. 1969, 437 S.W.2d 743.
Michigan  Weeks v. Slavick Builders, Inc., 1970, 24 Mich. App. 621, 180 N.W.2d 503.
South Carolina  Rutledge v. Dodenhoff, 1970, 254 S.C. 407, 175 S.E.2d 792.
Texas  Short v. Mitchell, Tex.Civ.App. 1970, 454 S.W.2d 285; Diana v. Parks, Tex.Civ.App. 1968, 433 S.W.2d 761.
Vermont  Rothberg v. Olenik, Vt. 1970, 262 A.2d 461.
Washington  House v. Thornton, 1969, 76 Wash.2d 428, 457 P.2d 199.
[6] Ch. 672.314, F.S. 1969, F.S.A. and Ch. 672.315, F.S. 1969, F.S.A.

672.314 Implied warranty: merchantability; usage of trade
"(1) Unless excluded or modified (§ 672.316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind... ."
[7] Ch. 672.104, F.S. 1969, F.S.A., "`Merchant' means a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill." (Emphasis supplied.)
[8] Ch. 672.105, F.S. 1969, F.S.A., "`Goods' means all things ... which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid... ."
[9] Javins v. First National Realty Corporation, supra.