HI NEIGHBOR ENTERPRISES, INC., a Florida Corporation, E. A. Griffis and Elizabeth H. Griffis, Plaintiffs,

v.

BURROUGHS CORPORATION, a Michigan Corporation, Defendant.

No. 78–0087.

United States District Court,
N. D. Florida,
Gainesville Division.

June 13, 1980.

Samuel Hankin, Gainesville, Fla., for plaintiffs.

Charles G. Cofer and Dana G. Bradford, II, Jacksonville, Fla., for defendant.

## PARTIAL SUMMARY JUDGMENT

HIGBY, District Judge.

Hi Neighbor Enterprises, Inc., has sued Burroughs Corporation seeking compensatory and punitive damages, interest, costs and attorney's fees for an alleged breach of contract and fraud. Four contracts are involved. Two, titled "Software and Support Agreement" (hereinafter "Software Agreement"), provide for purchase from Burroughs of computer education courses, control and management systems, and several programs including an "Order Processing Module." Two other contracts are titled "Business Machines Group Agreement for Equipment Sale" (hereinafter "Hardware Agreement"). They provide for purchase of training, a B–80 computer system, a management system, support services, and other material. Hi Neighbor claims the B–80 never functioned properly and support was inadequate. For the alleged failure of the system, Hi Neighbor asks for all consequential damages suffered, including employee salaries, remodeling expenses, travel expenses, repair expenses, and business losses. Hi Neighbor's punitive damages claims stem from its allegation that Burroughs fraudulently represented the availability of an Order Processing Module, allegedly the prime reason Hi Neighbor chose to purchase a Burroughs computer instead of an IBM.

Burroughs, rather ambitiously, has moved for a summary judgment on all issues. While there are issues of material fact to decide, there are some undisputed facts which entitle Burroughs to a judgment as a matter of law on some issues. Those issues are the limits of Burroughs' liability and the existence of an implied warranty.

Both "Software Agreements" state on the first page in large boldface type:

CUSTOMER ACKNOWLEDGES BY ITS SIGNATURE THAT IT HAS READ THIS AGREEMENT, UNDERSTANDS IT AND THAT IT CONSTITUTES THE ENTIRE AGREEMENT, UNDERSTANDING AND REPRESENTATIONS, EXPRESS OR IMPLIED, BETWEEN THE CUSTOMER AND BURROUGHS WITH RESPECT TO THE PROGRAM PRODUCTS AND SERVICES TO BE FURNISHED HEREUNDER AND THAT THIS AGREEMENT SUPERSEDES ALL PRIOR COMMUNICATIONS BETWEEN THE PARTIES INCLUDING ALL ORAL OR WRITTEN PROPOSALS. THIS AGREEMENT MAY BE MODIFIED OR AMENDED ONLY BY A WRITTEN INSTRUMENT SIGNED BY DULY AUTHORIZED REPRESENTATIVES OF CUSTOMER AND BURROUGHS.

THE TERMS AND CONDITIONS, INCLUDING THE WARRANTY AND LIMITATION OF LIABILITY, ON THE REVERSE SIDE ARE PART OF THIS AGREEMENT.

As the front of the agreement warned, the reverse side contained warranty terms and a limitation of liability. Warranty conditions are set out in paragraph nine. Its heading—"WARRANTY"—is in all capital boldface type. It reads:

9. *WARRANTY*

Each licensed Program Product classified in Category A or B is warranted to conform to the design specifications for that release as designated in the Program Product specification or similar applicable release issued by Burroughs. *EACH RELEASE OF A PROGRAM PRODUCT CLASSIFIED IN CATEGORY C IS LICENSED ON AN 'AS IS' BASIS WITHOUT ANY WARRANTY.*

This warranty is applicable to each unaltered release of the Licensed Program commencing on the date of its delivery to the Customer and terminating one year from the date of such delivery, ninety (90) days after the date on which Burroughs has released a revision thereof or upon termination of the license, whichever is earlier.

Customer agrees that its sole and exclusive remedy and Burroughs' sole obligation, if a Licensed Program warranted hereunder fails to conform to the applicable design specifications and Customer advised Burroughs of such failure in writing during the term of the warranty, is for Burroughs to provide programming services to attempt to correct any defect. For purposes of this Agreement non-conformance to design specification and term 'defect' shall mean only significant deviations from the design specifications for such current release of the Licensed Program.

*EXCEPT AS SPECIFICALLY PROVIDED HEREIN, THERE ARE NO OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.*

(Italics added to indicate boldface type.)

The liability limitation was titled in all capital boldface letters "LIMITATION OF LIABILITY." The paragraph, also in all capital boldface letters, said:

10. *LIMITATION OF LIABILITY*
IN NO EVENT SHALL BURROUGHS BE LIABLE FOR LOSS OF PROFITS, INDIRECT, INCIDENTAL, SPECIAL, CONSEQUENTIAL, OR OTHER SIMILAR DAMAGES ARISING OUT OF ANY BREACH OF THIS AGREEMENT OR OBLIGATIONS UNDER THIS AGREEMENT.
BURROUGHS SHALL NOT BE LIABLE FOR ANY DAMAGES CAUSED BY DELAY IN DELIVERY, INSTALLATION OR FURNISHING OF THE PROGRAM PRODUCT(S) AND/OR SERVICES UNDER THIS AGREEMENT.

IF A CHARGE IS PAYABLE WITH RESPECT TO ANY PROGRAM PRODUCT(S) OR RELATED MATERIALS LICENSED HEREUNDER, THEN BURROUGHS LIABILITY, IF ANY, FOR LOSS OR DAMAGES RELATING TO OR ARISING OUT OF THE LICENSE THEREFOR SHALL NOT EXCEED THE CHARGES ATTRIBUTABLE TO SUCH PROGRAM PRODUCT(S).

NO ACTION ARISING OUT OF ANY CLAIMED BREACH OF THE AGREEMENT OR TRANSACTIONS UNDER THE AGREEMENT MAY BE BROUGHT BY EITHER PARTY MORE THAN TWO (2) YEARS AFTER THE CAUSE OF ACTION HAS ACCRUED.

Similar distinctive, restrictive terms were set out in the "Hardware Agreements." The comparable provisions of the "Hardware Agreement" read:

14. The counterpart of this Agreement held by Burroughs shall be considered the original and shall control in case of any variance in any particular between it and any other signed copy.

This Agreement constitutes the entire agreement, understanding and representations, expressed or implied, between the Customer and Burroughs with respect to the equipment, and/or related services to be furnished and this Agreement supersedes all prior communications between the parties including all oral and written proposals.

4. Burroughs warrants: (1) Burroughs has title to the equipment and the right to convey title to Customer; and (2) for a period of one year from shipment, the equipment shall be free from defects in material and workmanship under normal use and service.

Written notice and an explanation of the circumstances of any claim that the equipment has proved defective in material or workmanship shall be given promptly by Customer to Burroughs. Customer's sole and exclusive remedy in the event of defect is expressly limited to the correction of the defect by adjust-

ment, repair, or replacement at Burroughs election and sole expense, except that there shall be no obligation to replace or repair items which by their nature are expendable.

No representation or other affirmation of fact, including but not limited to statements regarding capacity, suitability for use, or performance of equipment, shall be or be deemed to be a warranty or representation by Burroughs for any purpose, nor give rise to any liability or obligation of Burroughs whatsoever.

*EXCEPT AS SPECIFICALLY PROVIDED IN THIS AGREEMENT, THERE ARE NO OTHER WARRANTIES EXPRESS OR IMPLIED INCLUDING BUT NOT LIMITED TO ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.*

If Customer employs any non-Burroughs attachment, feature or device on the equipment, or any part thereof, furnished by Burroughs, which has not been approved in writing by Burroughs, Burroughs shall not be liable under this warranty. The approval of the use of any non-Burroughs attachment, feature or device shall not be deemed to be a representation, warranty or undertaking by Burroughs regarding such non-Burroughs equipment including its performance in conjunction with the Burroughs equipment.

8. *IN NO EVENT SHALL BURROUGHS BE LIABLE FOR LOSS OF PROFITS, INDIRECT, SPECIAL, CONSEQUENTIAL OR OTHER SIMILAR DAMAGES ARISING OUT OF ANY BREACH OF THIS AGREEMENT OR OBLIGATIONS UNDER THE AGREEMENT.*

*BURROUGHS SHALL NOT BE LIABLE FOR ANY DAMAGES CAUSED BY DELAY IN SHIPMENT, INSTALLATION OR FURNISHING OF EQUIP-*

*MENT OR SERVICES UNDER THIS AGREEMENT.*

No action arising out of any claimed breach of the Agreement may by [sic] brought by either party more than two (2) years after the cause of action has accrued.

(Italics added to indicate boldface type.)

■ Burroughs argues these provisions limit its liability and obligations to Hi Neighbor. The provisions are enforceable under Florida law[1], and there are no facts which would support refusing to enforce them.

Florida has adopted the Uniform Commercial Code. Its statutes, while creating implied warranties of merchantability[2] and fitness for a particular purpose[3], allow their exclusion or modification if certain requirements are met. The language rejecting implied warranties of merchantability must mention merchantability and, if it is in writing, the writing must be conspicuous. § 672.316(2), Fla.Stat. (1977). An implied warranty of fitness for a particular purpose may be rejected by conspicuous writing. § 672.316(2), Fla.Stat. (1977). The warranty exclusions of the contracts in this case meet the requirements for modification or exclusion of the implied warranties. They are enforceable.

Hi Neighbor's arguments against enforcing the provisions rely heavily on decisions made before adoption of the Uniform Commercial Code and rely on Florida's judicial development of implied warranty theories. *See e. g., Entron, Inc. v. General Cablevision of Palatka,* 435 F.2d 995 (5th Cir. 1970); *Manheim v. Ford Motor Co.,* 201 So.2d 440 (Fla.1967); *Gable v. Silver,* 258 So.2d 11 (Fla. 4th D.C.A. 1972). An admirable history of court compassion for consumers will not negate the plain language of Florida's statutes which by their requirements protect the implied warranties as well as provide for their waiver. The exclusions in all four contracts are effective.

---

1. Although all contracts state the law of Michigan will govern any disputes, both parties have relied upon Florida law. I view this as a waiver of the Michigan law provision and a mutual consent to apply Florida law in this case.

2. § 672.314, Fla.Stat. (1977)

3. § 672.315, Fla.Stat. (1977)

Florida also allows contracts to limit damages recoverable for breach of warranty and breach of contracts. §§ 672.-316(4) and 672.719, Fla.Stat. (1977). Such agreements are enforceable. *See, Investors Premium Corporation v. Burroughs Corporation*, 389 F.Supp. 39 (D.C.S.C.1974). In this case, compensatory damages can be no more than those set out in the agreements.

Burroughs is granted a summary judgment restricting its warranty obligations to those set forth in the contracts and restricting damages available to those provided for in the contracts. In all other aspects the Motion for Summary Judgment is denied.[4]

---

**4.** The fraud action for punitive damages is a tort action not a contract action. *See, Entron, Inc. v. General Cablevision of Palatka*, 435 F.2d 995 (5th Cir. 1970). Although the Plaintiff's evidence on this theory is quite weak, it does create an issue of material fact.