387 So.2d 986 (1980)
GEORGIA-PACIFIC CORPORATION, Appellant,
v.
SQUIRES DEVELOPMENT CORPORATION, Appellee.
SQUIRES DEVELOPMENT CORPORATION, Appellant,
v.
Conrad J. De SANTIS, and Others, Appellees.
GEORGIA-PACIFIC CORPORATION, Appellant,
v.
Conrad J. De SANTIS, and Others, Appellees.
Nos. 76-2395, 78-420 and 78-639.
District Court of Appeal of Florida, Fourth District.
August 1, 1980.
*987 Basil E. Dalack and Donald J. Beuttenmuller, Jr., of Walton, Lantaff, Schroeder & Carson, West Palm Beach, for Georgia-Pacific Corp.
Paul D. Mark Lucas and Michael J. Amendola of Hamilton, James, Merkle & Young, West Palm Beach, for Squires Development Corp.
Timothy W. Gaskill of De Santis, Cook, Meehan, Cohen, Gaskill & Silverman, P.A., North Palm Beach, for De Santis and others.
BERANEK, Judge.
This matter involves three consolidated appeals from two different final judgments entered in separate lawsuits. The general situation involved a condominium office in which defective wood paneling was installed. The manufacturer of the paneling, the developer/builder of the condominium unit, and the purchasers of the condominium were involved in two lawsuits resulting in the two final judgments under attack. The matter is extremely confused and we sympathize with the trial court in attempting to sort out the inartfully pled claims. We conclude that the final judgments below must be reversed. On remand, it will be *988 necessary to consolidate the claims and require total repleading of the issues. We will first attempt to outline the facts giving rise to the litigation, then summarize the status of the cases, the issues tried and the damages awarded, and finally, discuss the errors requiring reversal.
There are three entities involved. Squires Development Corporation was a developer involved in the construction and sale of the condominium office unit located in a building complex it constructed. De Santis and Cook, P.A., was a law firm composed of Conrad De Santis and Robert Cook. The owners of this professional association purchased a new condominium unit from Squires and had the developer install wall paneling in it. Georgia-Pacific Corporation was a manufacturer of various wood products who manufactured and sold the particular paneling in question. These three parties, Squires, De Santis, and Georgia-Pacific, were involved in two separate lawsuits, both relating to the consequences of a defect in the wood paneling which had been supplied by a retailer who was also initially involved in the litigation but is not involved in this appeal.
The facts are generally as follows. The De Santis law firm purchased an undecorated condominium office from Squires on January 7, 1974, for a total of $60,236.50. This price included the cost of paneling which the buyers chose to have installed in the office. The De Santis group selected a particular wood paneling manufactured by Georgia-Pacific. A supplier named Ray Tylander, Inc., sold the paneling and delivered it to Squires for installation in the unit. De Santis & Cook took possession of their unit and attempted to practice law there. After the unit had been occupied for a brief period, it became evident that the paneling was defective. For unknown reasons, the paneling emitted a substance or fumes which irritated the eyes, nose, throat and lungs of all persons remaining in the office for any period of time. Although not without dispute, there was substantial evidence that the paneling made the office totally unuseable as a place in which to practice law. De Santis complained to Squires, who, in turn, complained to the retailer and to Georgia-Pacific. The parties had numerous conferences and various steps were taken in an attempt to remedy the problem. Georgia-Pacific told De Santis to run the air conditioners constantly. This was done, but the offending fumes remained. The walls were sprayed with a special material and were eventually washed down. The problem remained unabated.
De Santis made complaints to Squires and after approximately three months of occupancy demanded that Squires consider removing the defective paneling. At approximately the same time, De Santis and Squires were also negotiating regarding the possibility of De Santis' purchasing a new office unit. In May, 1974, after approximately four to five months of occupancy, De Santis moved out of the first unit into a second unit within the same complex.[1] In a complex contractual arrangement, De Santis and Squires agreed to exchange the office with the defective paneling for another office twice the size of the first office. Squires gave De Santis a $64,496.73 credit on the purchase of the new office unit which had a sales price of $130,000. The $64,496.73 credit covered the initial purchase price of $60,236.50, plus reimbursement for all of the specialized improvements, including paneling, carpeting and furnishings, which De Santis had put in the first unit. De Santis did not actually need or want a unit twice as large as the one initially purchased. However, De Santis and Squires had an additional side agreement regarding De Santis' sub-leasing half of the new unit to a sub-tenant and Squires' cooperation in providing such a tenant. De Santis did sub-lease half of the new unit. De Santis apparently moved into that unit and practiced law without difficulty. The financial details of the exchange of the old unit for the new units are confusing to say the least. When Squires took back the initial unit, it somehow assumed the mortgage and also began paying the monthly maintenance *989 fees and taxes on it. Despite this, De Santis still remained liable on the mortgage but apparently no demand was ever made on De Santis for this obligation.
Also, in May, 1974, Squires offered to sell the initial condominium unit to Georgia-Pacific for $64,496.73, the same price it credited De Santis for the unit. At this point, the paneling was still in place. Georgia-Pacific rejected this offer of sale but offered to pay Squires $7,000, which Georgia-Pacific estimated would completely cover the costs of removing and replacing the paneling. The evidence at the later trials showed repairs could have been accomplished for less than the $7,000 offered. Squires rejected this cost of cure approach and continued to hold the unit. Squires later asserted it did incur expenses in doing so.
The condominium unit was eventually sold by Squires to a Dr. Ackerman in August, 1975, for $57,000, with the paneling still in place. After the period of approximately two years, it had become inoffensive and was acceptable for it intended use as a wall covering.
On the basis of these facts, two suits were instituted. On October 10, 1974, De Santis filed suit against both Squires and Georgia-Pacific in Case No. 74-2721. On March 25, 1975, Squires filed a cross-claim for indemnity against Georgia-Pacific. On October 15, 1974, five days after the initial suit was filed, Squires also filed a separate suit against Georgia-Pacific designated as Circuit Court Case No. 74-2779. The first case of De Santis v. Squires and Georgia-Pacific was a non-jury matter. The second filed case of Squires vs. Georgia-Pacific was a jury case and was tried and determined before trial of the earlier filed non-jury case.
The two cases proceeded independently of each other, and the trial court denied Georgia-Pacific's motions to consolidate them. The eventual judgment in Case No. 74-2779 (the jury case) was in favor of Squires against Georgia-Pacific in the amount of $16,030. In Case No. 74-2721 (the non-jury case), the eventual final judgment was in favor of De Santis against both Squires and Georgia-Pacific in the sum of $10,436. In addition, squires prevailed on its cross-claim for indemnity in the non-jury action against Georgia-Pacific and received a judgment over against Georgia-Pacific in the amount of $10,436, plus a judgment for attorneys' fees in the amount of $2,637. Appeals have been taken by Georgia-Pacific as to all judgments against it and by Squires as to the judgment against it.
We initially treat the case which was disposed of first by jury trial. Case No. 74-2779 was a suit by Squires against Georgia-Pacific where Squires alleged it owned and built a condominium office which had been sold to a third party, De Santis. Squires alleged it bought Georgia-Pacific's paneling which was incorporated in the office and that the paneling was defective. Squires alleged the defective paneling constituted a breach of implied warranty by Georgia-Pacific and that "as a direct and proximate result of the defendant's breach of an implied warranty of fitness and merchantability, the plaintiff [Squires] has had to void the sale to its third party purchaser of Unit 1-E; retake possession of said unit, pay extra sales commissions and closing costs; and in addition, lost the use of said office space while having to expend moneys to maintain it." (Emphasis supplied.) These were the only elements of damages and the only theory of liability was breach of warranty. This case was tried before a jury which returned a verdict of $16,030. This verdict was almost to the penny in accordance with what counsel for Squires had asked for in closing argument. Squires introduced evidence of the following elements of damages over Georgia-Pacific's objection:

 (1) The difference between the credit
 given to the third party purchaser, De
 Santis, when Squires took back the
 Unit # 1-E ($64,496.73) and the resale
 price to Dr. Ackerman in August, 1975
 of $57,000 $7,496.73
 (2) Mortgage payments for Unit # 1-E
 from May, 1974, until July of 1975,
 paid by Squires 5,749.50
 (3) Condominium maintenance fees paid
 by Squires from May, 1974, until
 July, 1975, for Unit # 1-E 1,155.00
*990 (4) Utility bills for the same unit for
 the same period of time 57.18
 (5) Pro-rated real estate taxes for same
 unit for the same period 1,068.00
 (6) Closing costs on resale to Dr. Ackerman 433.70
 (7) Changing sign on building for third
 party purchasers, De Santis 70.72
 ___________
 TOTAL $16,030.83

The jury returned a verdict of $16,030, inexplicably reducing this amount by 83 cents. Judgment was subsequently entered on the verdict.
Case No. 74-2721 was filed first but determined at a non-jury trial subsequent to the jury trial in the other case. In Case No. 74-2721, De Santis sued both Squires and Georgia-Pacific on theories of breach of warranty, breach of contract, and negligence. De Santis alleged it had purchased the condominium from Squires and that Georgia-Pacific had manufactured and supplied the defective paneling. De Santis claimed damages in the sum of $37,500, represented by "damages sustained in purchasing a new and different office condominium, additional interest charges required to purchase a new office condominium, additional mortgage loan service charges, moving charges, loss of secretarial help, retraining expenses, loss of clients in business, loss of attorneys and secretaries' efficiency and individual pain, suffering and other damages."[2]
In the non-jury trial, plaintiff De Santis introduced evidence of the following damages over objection of defendant, Georgia-Pacific:

 (1) $11,534.80, representing the interest difference
 on a 9%, $104,000.00 mortgage on the second
 larger unit and the 8 1/2%, $47,000.00 mortgage
 on the first unit;
 (2) $278.55, moving expenses incurred in moving from
 the first to the second unit;
 (3) $1,498.00, in closing costs on the new larger
 unit;
 (4) $1,766.00, for the time De Santis and his law
 firm expended trying to solve the paneling
 problem; and
 (5) $7,500.00, for business interruption and
 disruption resulting from the noxious odor.
 TOTAL $23,577.35.

The trial court reduced the requested damages by some $13,141.35, and entered judgment in the amount of $10,436.00 in favor of De Santis against both Squires and Georgia-Pacific. The court also entered judgment in favor of Squires against Georgia-Pacific on its cross-claim for indemnity in the same amount of $10,436.00, plus attorneys' fees of $2,637.00. The final judgment in Case No. 74-2721 makes it clear that De Santis is entitled to only one recovery and that the primary responsibility for the payment of the judgment rests upon Georgia-Pacific. Under the judgment, if Georgia-Pacific paid the $10,436.00 to De Santis, it would no longer owe this amount to Squires.
The combined effect of all of the litigation is as follows:
(a) Georgia-Pacific owes Squires $16,030 for breach of warranty;
(b) Georgia-Pacific owes Squires $2,637 for attorneys' fees;
(c) Georgia-Pacific owes $10,436 to De Santis for breach of warranty or $10,436 to Squires for indemnity;
(d) Squires owes $10,436 to De Santis for breach of warranty.
Georgia-Pacific and Squires seek review of all adverse judgments against them.
Appellant, Georgia-Pacific, in Case No. 74-2779 (DCA Case No. 76-2395), raises numerous points for consideration by this court. Georgia-Pacific contends error occurred regarding the following:
1. Georgia-Pacific argues the trial court erred in denying its Motion to Dismiss Squires' complaint, which was based on breach of warranty. It urges the cause of action, if any, was actually vested in De Santis.
*991 2. It asserts that the court abused its discretion and committed reversible error in failing to consolidate the cases of Squires v. Georgia-Pacific, Circuit Court Case No. 74-2779, and the cross-claim of Squires v. Georgia-Pacific in Circuit Court Case No. 77-2721. This argument is based on a two-pronged theory that the separate disposition of the two suits in a separate jury and non-jury trial resulted in both a prejudicial splitting of the Squires cause of action and the failure to join an indispensable party, since De Santis was not a party to this case which was tried and disposed of first.
3. Georgia-Pacific claims error in regard to the damages because, instead of limiting Squires to the cost of repairing and replacing the paneling, Squires was allowed to recover all expenses in retaking and reselling the unit. Georgia-Pacific further maintains that the difference between the sale price to De Santis and the sale price to Ackerman was not shown to be due to the defective paneling and that the allowance of Squires' payment of mortgage obligations on the unit constituted a duplicate recovery. It further asserts that the court's instructions to the jury allowed them to consider unforeseeable, consequential and incidental damages based upon the "value of the office" rather than upon the proper standard, cost of curing the defect by replacing the paneling.
4. Georgia-Pacific also asserts error in the trial court's failure to grant a directed verdict in its favor due to the absence of any proof that Squires had a legal and enforceable responsibility to retake ownership of the unit from De Santis. We believe strong arguments exist in support of all of the above positions, but we need consider only the last argument regarding Squires' legal duty to retake possession and ownership of the unit.
The complaint alleged a cause of action based on breach of implied warranty in that the defective paneling caused damage to Squires. The sole reason for the damage asserted by Squires is contained in paragraph 9, which is as follows:
9. As a direct and proximate result of the defendant's breach of implied warranty of fitness and merchantability, the plaintiff [Squires] has had to void the sale to its third party purchaser [De Santis] of Unit 1-E; retake possession of said unit, pay extra sales commissions and closing costs; and in addition, lost the use of said office space while having to expend moneys to maintain it.
While we recognize it, we do not pass upon the issue of whether Squires actually stated a cause of action against Georgia-Pacific. Plaintiff, Squires, asserted a cause of action based on its having to retake ownership and possession of the unit. On the assumption that this complaint does state a cause of action, we find a total failure of proof to connect the alleged breach of warranty to the damages complained of. The damages previously outlined were all specifically and directly related to the retaking and reselling of the unit by Squires, but the proof showed that Squires retook the unit voluntarily and not under any legal compulsion. There was no attempt whatsoever to prove that Squires was legally compelled to act as it did. We find this to be an essential element of the cause of action. The trial court should have directed a verdict for Georgia-Pacific because there was simply no connection between the damages and the breach of warranty. In short, Squires never attempted to show it had to take the unit back. There is also a total lack of any logical connection between the difference in sales prices on the first sale and the second sale, and the defective paneling. It was absolutely uncontested that the decline in the value of the unit on the open market was not due to the paneling which at the time of the second sale had become completely acceptable. Apparently, the real estate market changed, but not due to the paneling. We are perplexed at the allowance, over defendant's objection, of the mortgage payments made by Squires as a recoverable element of damages to Squires. If Squires paid the mortgage on property which it owned, this increased Squires' equity in the property, and when it was resold, should have resulted in a greater net cash amount to Squires. Allowing this element of damages constituted an erroneous duplication.
*992 Notwithstanding other strong arguments on the asserted errors which might be made, we conclude the allegations of paragraph 9 were essential to the assumed cause of action stated in the complaint. Since there was no proof of these allegations, the trial court erred in failing to direct a verdict in favor of Georgia-Pacific. We have been directed to no case specifically on point and rely, for this decision, upon the general authority that a plaintiff must present evidence in support of each essential allegation in the complaint in order to avoid a directed verdict sought by a defendant. See Marcano v. Puhalovich, 362 So.2d 439 (Fla. 4th DCA 1978), dismissed, 365 So.2d 714 (Fla. 1978), and Shidiam Corp. v. M and D Research Corp., 374 So.2d 553 (Fla. 4th DCA 1979).
In the non-jury case designated as Case No. 74-2721, Georgia-Pacific appeals the court's judgment of $10,436 in favor of De Santis and the judgment on the indemnity cross-claim of $10,436 plus attorneys' fees of $2,637 in favor of Squires. De Santis' theory of liability against Georgia-Pacific was breach of implied warranty under the Uniform Commercial Code. De Santis asserted the same theory of liability against Squires, but it appears that the Uniform Commercial Code did not technically apply to Squires because it was not a merchant dealing in paneling. See Section 672.104(1), Florida Statutes (1977). Nevertheless, the cause of action stated appears cognizable under Florida law extending an implied warranty of merchantability to purchasers of new condominiums where the item in question is an integral part of the condominium. Gable v. Silver, 258 So.2d 11 (Fla. 4th DCA 1972), cert. discharged 264 So.2d 418 (Fla. 1972).
Squires' theory of recovery on the cross-claim against Georgia-Pacific was indemnity; that is, if it was liable to De Santis, then Georgia-Pacific was liable to Squires and additionally responsible for Squires' attorneys' fees. Squires also occupies the position of an appellant in seeking to overturn the trial court's judgment of $10,436 in favor of De Santis and against Squires in the non-jury action.
We conclude the judgment against Georgia-Pacific and in favor of De Santis is erroneous and must be reversed. As with the preceding point, once again, there is no legal connection between the breach of warranty and the damages complained of. The evidence of De Santis' damages was admitted over objection and has been previously stated in detail. It includes the elements of (1) increased interest, (2) moving expenses, (3) increased closing costs, (4) time and trouble spent in solving the problem, and (5) business losses.
There was no connection between the paneling and De Santis' purchase of a new unit twice as large as the original unit. Assuming, without deciding, that the purchase of a comparable new unit was required, this clearly did not authorize buying one twice as large and twice as expensive and charging Georgia-Pacific with all of the additional expenses connected with the new unit. The higher interest on the higher mortgage debt was not attributable to the paneling. The cost of the first unit was slightly over $60,000 and the cost of the second unit was $130,000. De Santis sought to recover its increased closing costs attributable to the second purchase. It would appear that the increase in closing costs was due to the increase in the cost of the unit, which had absolutely nothing to do with the paneling. Further, the item of $1,766 for time and trouble which De Santis and his staff spent in trying to solve the paneling problem is simply not a compensable item of damages in a claim for breach of warranty evolving under contract law. The plaintiff had a separate item of $7,500, for loss of income to its business and may not also recover for the time and trouble expended in attempting to solve the problem. We thus find the court erred in admitting and considering the various elements of damages, and reverse the final judgment against Georgia-Pacific and in favor of De Santis.
We turn now to the question of the court's failure to consolidate the various claims and splitting of causes of action. This issue is raised by Georgia-Pacific in *993 both appeals. Although we readily concede it is much easier to view this question from hindsight, we conclude that the trial court did err in failing to consolidate the claims of the various parties for determination before a single fact finder. The claims of Squires against Georgia-Pacific as asserted in its direct suit against Georgia-Pacific should not have proceeded separately before different fact finders. The damages sought by De Santis and by Squires against Georgia-Pacific were clearly related to each other. All of the claimed damages by both De Santis and Squires were inextricably intertwined with the agreements between De Santis and Squires regarding the retaking and resale of the first unit by Squires and the sale and purchase of the old and new units by De Santis. The claims of each are dependent upon the contractual obligations between these two parties. The law of this State generally provides that all damages accruing to a party as a result of a single wrongful act must be claimed and recovered in one action or not at all. This rule is designed to prevent a multiplicity of suits. Gaynon v. Statum, 151 Fla. 793, 10 So.2d 432 (1942). It is extremely difficult to map out precisely which claims were properly asserted by which party against which other party in the various capacities occupied in the two different suits.[3] We conclude that all of the injuries to the various parties herein grew out of a single transaction; therefore, all parties' claims should have been consolidated and considered before a single fact finder. Consequently, the trial court abused its discretion in denying the motions to consolidate. This unfortunate occurrence resulted in a miscarriage of justice which can only be corrected by remand for a new trial on the issues remaining between the De Santis law firm, Squires, and Georgia-Pacific.
We frankly admit that we do not attempt to solve all of the problems presented by these cases. The issues are established from the pleadings and these must be totally redrafted upon remand for a new trial which we require herein. These claims are circumscribed and limited to the claims and theories of recovery asserted in Circuit Court Case No. 74-2721. A new trial is not required in Circuit Court Case No. 74-2779.
The final judgments below are reversed and the cause remanded for further proceedings.
REVERSED AND REMANDED.
CROSS, SPENCER C., and SMITH, CHARLES E., Associate Judges, concur.
NOTES
[1] The first unit was designated as Unit 1E and the second as Units 2J and 2K.
[2] In asserting entitlement to the damages, counsel for De Santis on appeal urges this court to adopt a rule totally doing away with any distinction between tort and contract.
[3] The complexity of the matter is demonstrated by the following chronological list of all of the briefs filed in this consolidated appeal.
 (1) Georgia-Pacific's main brief (appellant)
 (2) Georgia-Pacific's amended brief (appellant)
 (3) Squires' answer brief (appellee)
 (4) Georgia-Pacific's reply brief (appellant)
 (5) Squires' initial brief (appellant)
 (6) Georgia-Pacific's initial brief (appellant)
 (7) De Santis & Cook's answer brief (appellee)
 (8) Squires' reply brief (appellant)
 (9) Squires' answer brief (appellee)
 (10) De Santis' answer brief (appellee)
 (11) Squires' supplemental brief (appellee)
 (12) Georgia-Pacific's reply brief to
 Squires' supplemental brief (appellant)

As indicated by this list, the matter has grown overly-complex. The pleadings in the trial court and the briefs before this court have done little toward the end of simplifying and clarifying the issues.