Replevin action by Galen M. Rowsey against Roy C. Inman. From a judgment for the plaintiff, the defendant appeals.
Reversed and remanded.
This appeal was taken by defendant Roy C. Inman from a judgment rendered on May 6, 1948, for plaintiff Galen M. Rowsey in an action of replevin brought by Rowsey in Palm Beach Circuit Court to recover from Inman the possession of an automobile, a 1946 Ford 4-door "Deluxe Sedan", engine number 99A-1180957. So we are dealing here with that most mobile and ambulatory class of personal property in common use, the automobile.
The exhibits introduced in evidence in the trial court, and later sent to this Court, show that plaintiff Rowsey, a resident of Los Angeles, California, bought this car on December 13, 1946, from Francis R. Schuh of Laguna Beach, California, who on that date delivered to Rowsey a "bill of sale" duly executed, also a 1946 California "Registration Card" and a 1946 California "Certificate of Ownership", both of which documents were issued to Schuh by the California "Department of Motor Vehicles" on November 7, 1946, and show that Schuh became the first purchaser of the car on November 6, 1946. And on the back of the Certificate of Ownership there were spaces provided for "Endorsements for Transfer of Ownership." The first of these was signed by Schuh on December 13, 1946, as "Registered Owner." The next was signed by Galen M. Rowsey, by Inez G. Martin, "dealer acquiring vehicle through trade or purchase." Then follows the name of "Charles F. Noonan, by Inez G. Martin," as "purchaser" in the space provided for "Application for transfer of registration to purchaser;" but a pen line was later run through the names of Noonan and Inez G. Martin (the latter apparently being an employee of Rowsey), and on the next line the name of Galen M. Rowsey was signed as the "Name of New Lien or Mortgage Holder (Legal Owner)." It is apparent that Noonan's name was stricken and Rowsey's name inserted after certain things happened a few days later which we will presently refer to.
The power of attorney by Noonan to Inez G. Martin, dated January 25, 1947, was executed on a printed form, signed by Noonan, and referred to Noonan as the owner and authorized Inez G. Martin to sign Noonan's name to any certificate of ownership issued by the "Department of Motor Vehicles of the State of California" covering this car, minutely describing it. The original certificate of ownership which had been issued to Schuh, was of course, not delivered to Noonan. It had to be used *Page 656 
in getting a new certificate in Noonan's name, which was the intention of the parties at that time.
On the back of the "Registration Card," which Schuh delivered to Rowsey along with the "California Certificate of Ownership," on December 15, 1946, there was a provision to the effect that upon the sale of the vehicle described on the face of the card, the card and ownership certificate, properly endorsed should be delivered to the buyer, and that the seller should immediately notify "the Department" in writing, and that "the buyer, within ten days, shall apply to the Department for transfer of ownership." This record indicates that this latter provision was not complied with by either Rowsey or Noonan, except that Noonan gave Inez G. Martin a power of attorney to do all things necessary to obtain the new certificate in his name.
A little over a month after he purchased the car from Schuh, Rowsey on January 25, 1947, in all good faith, and with a high degree of credulity, sold this automobile to a man who gave his name as Charles F. Noonan. So far as the record shows, Rowsey had never seen or heard of this man before. The sales price was $2,317.50, which included a sales Tax of $67.50, and the "Motor Vehicle Department License," $28.50, the latter amount evidently being the cost of the California license plates or tags for 1947. In view of these taxes, which, as to the license plates alone amounted to $28.50, the terms of the sale were amazing: to-wit, only $30.00 cash, and the balance, $2316.00, which included cost of license tag, to be paid five days later, on January 30, 1947, for which Noonan gave Rowsey a check for $2,316.00 on a bank in another part of Los Angeles — which check later proved to be worthless. Just when Rowsey learned that the check was dishonored is not shown.
So on January 25, 1947, Rowsey delivered the car with the 1947 license plates attached, to Noonan, who must have been a most plausible and ingratiating rascal. But Rowsey did take one precaution — he required Noonan to execute a "conditional sales contract" to secure the payment of the balance due, $2,316.00, five days later, using a long printed form, which, however, is not shown to have been filed for record in California or Florida, or any other State. This trade was concluded on a Saturday, January 25, 1947, and later, probably during the middle part of the following week, Noonan's check was dishonored. Meanwhile, Noonan and the automobile had disappeared to parts unknown. All that Rowsey had left was the unrecorded conditional sales contract and the undelivered certificate of ownership which had been endorsed over to Noonan. It was then, perhaps, that the name of Charles F. Noonan was stricken from the "certificate of ownership," and Rowsey's name inserted below it.
This "conditional sales contract" recited that Rowsey "hereby sells" and that Noonan "hereby purchases," the described automobile, subject to the terms and conditions of the contract, setting forth the terms of the sale as above referred to, and of course providing for the retaking of possession by the seller in case of default. This document was executed by the use of a long printed form entitled in bold letters "Conditional Sale Contract." But it was more than that. Among its many provisions on the front page is one to the effect that all the terms and conditions on the reverse side form a part of the contract, and among these is one to the effect that the "title to said property shall remain in seller until all payments herein provided for are made," etc. But the record does not show that this contract was ever recorded on the public records of California, or Florida, or any other State, or that Rowsey notified the proper authorities of any of the States that Noonan had disappeared without paying him for the car, describing it.
The subsequent striking out of Noonan's name on the California certificate of ownership is probably not material here. Noonan had already become the ostensible owner and had been placed in possession by Rowsey of a practically new and valuable car, with 1947 license plates attached. While the contract provided that Rowsey could retake possession upon default in payment of balance due on sales price five days after the sale, Rowsey, knew or ought to have *Page 657 
known, that within those five days Noonan could have driven the car to any one of the States on the Atlantic seaboard, or North into Canada, without being molested, and with ample opportunity to sell the car to some innocent purchaser for value and without notice of Rowsey's contract rights, especially in those States, such as Georgia, which do not require the obtaining or possession of certificates of title or ownership. Thus Rowsey carelessly took this risk and laid a trap, unintentionally of course, for innocent purchasers for value and without notice, in other States, which, even though ineffectual, could put them to the expense of defending a law suit.
And, sure enough, this automobile turned up in Georgia a few days later, just when the record does not show, but on February 21, 1947, just twenty-seven days after Rowsey had sold and delivered it to Noonan in Los Angeles, this car was sold in Valdosta, Georgia, by R.F. Raines, through "Hewitt Auction Sales" to I.B. Knight, of Starke, Florida, for $1700. cash. A bill of sale was executed by Raines to Knight on a printed form headed "Hewitt Auction Sales, Commission Auctioneers", Valdosta, Georgia, but this contract of purchase and sale was signed by I.B. Knight and R.F. Raines before a notary public on February 21, 1947, and Hewitt Auction Sales is only referred to in the contract as the "auctioneer seller." Raines is referred to in the bill of sale as the "owner" and "seller" and therein Raines covenanted with the purchaser, Knight, that he, Raines, was the true and lawful owner of the described automobile and that the same was free from all incumbrances and that he had the right and power to sell the same. As certificates of title are not required in Georgia, none was obtained. There is not the slightest evidence that I.B. Knight, or Raines either, had any knowledge or notice whatever that Galen M. Rowsey of California held a retention of title contract covering this automobile.
Armed with this bill of sale, I.B. Knight later applied to the Motor Vehicle Commissioner of Florida for a certificate of title and some two weeks later a Florida Certificate of Title, which fully described the vehicle, was delivered to I.B. Knight, of Starke, Florida, which showed "no liens." The motor vehicle Commissioner, being "satisfied" that Knight was the owner, Sec. 319.02, F.S.A. issued the certificate of title to him on March 18, 1947.
The letter in the record signed by Hon. John Kilgore, who had succeeded Mr. Asbell as Motor Vehicle Commissioner, dated August 9, 1947, shows that on April 5, 1947, the title to this vehicle had been transferred by I.B. Knight to Ollie Thornton and Gracie Thornton, of Starke, Florida, and that, on proper combination application, certificate of title had been issued to them.
Ollie Thornton and Gracie Thornton thereafter placed this automobile in the hands of Ralph Hardwick, a dealer, doing business as "Ralph's Used Cars" in West Palm Beach, Florida, for sale, and the appellant, Roy C. Inman, purchased the car from dealer Ralph Hardwick on May 28, 1947, and paid him $1800.00 cash therefor. One who purchases an automobile from a licensed dealer has the right to believe that the dealer has the right to sell it. See Russell v. Donaldson, 142 Fla. 394, 195 So. 198. Hardwick delivered to Inman the title certificate naming the Thorntons as the owners thereof, with an assignment on the reverse side, signed by the Thorntons, the name of the assignee being left blank. The letter from the State Motor Vehicle Commissioner of Florida, dated August 9, 1947, says that: "Ollie Thornton and Gracie Thornton transferred same vehicle to Roy C. Inman, Boca Raton, Florida, by use of combination application, and title issued in his name on May 28, 1947, and shows no liens." The original title certificate issued to Roy C. Inman is in this record and is dated May 28, 1947.
This Florida "Certificate of Title", thus issued to appellant Roy C. Inman on May 28, 1947, minutely describes the automobile, was executed in due and regular form, and shows no liens. The original was attached to the defendant's pleas in the trial court, and the description is the same as that contained in the California "Certificate of Ownership" held by appellee Rowsey, and *Page 658 
in the conditional sale contract Rowsey entered into with Noonan. So it was undoubtedly the same car.
Upon the sale of this car to appellant Inman by "Ralph's Used Cars" in West Palm Beach on May 28, 1947, possession was delivered to Inman, and he retained possession and used the same until September 22, 1947, a period of about four months, when this replevin suit was started by Rowsey, and the Sheriff of Palm Beach County took possession thereof by virtue of a writ of replevin; since which time Inman has not had possession. It is agreed that at that time the value of the car was $1800.00, and its use value since that time is $5.00 per day.
Judgment was rendered in favor of plaintiff Rowsey, and defendant Inman took this appeal.
It is not denied that these several Florida purchasers of this car — I.B. Knight, who bought from R.F. Raines in Valdosta, Georgia; Ollie Thornton and Gracie Thornton, who bought from Knight, and Roy C. Inman, the appellee, who bought it from the dealer, Ralph Hardwick of West Palm Beach, who had it on hand to sell for the Thorntons — were all innocent purchasers for value and without notice of any right, lien or title whatever in Galen M. Rowsey of Los Angeles, California, or of any one else. And it is admitted that appellee Rowsey had not given any of the purchasers in Florida constructive notice by filing his claim for record in the office of the Motor Vehicle Commissioner of Florida, as provided by Section 319.15, F.S.A. This statute, which was adopted in 1941, reads in part as follows:
"No liens for purchase money or as security for a debt in the form of retain title contract, conditional bill of sale or chattel mortgage, or otherwise, on a motor vehicle, as now or may hereafter may be defined by law, shall be enforceable in any of the courts of this state, against creditors or subsequent purchasers for a valuable consideration and without notice, unless a sworn notice of such lien, showing the following information, viz: (1) Name and address of the registered owner; (2) Date and amount of lien; (3) Description of the motor vehicle; particularly showing make, type, motor and serial number; and (4) Name and address of lien holder; shall be recorded in the office of the motor vehicle commissioner of the State of Florida, which filing is in lieu of all filing and recording now required or authorized by law, and shall be effective as constructive notice when filed;" etc.
It is contended that this statute is not applicable as against appellee Rowsey, because he never parted with his title to the car or conveyed the title to Noonan, and was still the holder of the title when he brought this action. But when Rowsey sold to Noonan, he delivered possession of the car to Noonan and took from him a combined conditional sale and retain title contract. And we have frequently held that possession of personal property is prima facie evidence of ownership. So we think that Rowsey should have complied with Section 319.15, F.S.A., and, not having done so, the purchasers for value and without notice in Florida, including Roy C. Inman, can raise the shield of this statute for their protection.
Furthermore, one of the definitions of the word "owner" in Section 66 of the California Vehicle Code, published in 1948, based on an act of 1935 as amended in 1937, is "the person entitled to the possession of a vehicle as a purchaser under a conditional sale contract." So, when Rowsey sold and delivered possession of this car to Noonan in Los Angeles on January 25, 1947, with the 1947 license plates attached, for $30.00 cash, and under the sales contract herein above outlined, he vested Noonan with the indicia of ownership for at least the five days allowed in the contract for the payment of the balance due on the purchase price, and entitled him to possession under the contract for such five day period. And it is quite possible that within that five days period Noonan sold and delivered the car to some one, probably some one in Georgia, who bought in entire good faith. It may have been R.F. Raines, or Hewitt Auction Sales. At least, we know that it turned up at "Hewitt Auction Sales" in Valdosta, just twenty seven days after *Page 659 
Rowsey had sold it to Noonan in Los Angeles. How long the car had been in Georgia, or in Valdosta, when I.B. Knight, of Starke, Florida, bought it there, the record does not show, but it does show that Knight paid $1700.00 for this car on February 21, 1947, and received a bill of sale for it. Then, as above shown, Knight, some three weeks later, armed with this bill of sale, on the stationery of the dealer, made to him in a State which does not require certificates of title, obtained a Florida certificate of title. Later on, Knight sold the car to the Thorntons on April 5, 1947, and they obtained a certificate of title. The car was later placed in the hands of a dealer, Ralph Hardwick, doing business as "Ralph's Used Cars," in West Palm Beach, and was sold by him on May 28, 1947, to appellant Roy C. Inman, for $1800. cash, to whom the car was delivered along with the Florida title certificate which the Thorntons had obtained and had assigned in blank, and, on strength of this, the Florida Motor Vehicle Department properly issued what we deem to be a valid certificate of Title to appellant Inman.
There is not a word in this record to show, after Noonan's disappearance with this automobile, sold and delivered to him by appellee in California on January 25, 1947, and his failure to pay the balance due Rowsey within the five days provided in the contract, that Rowsey made any effort, by letter, or post card, or telegram, to notify the proper authorities in California or any of the other States, including the Motor Vehicle Departments of such States as had them. Although he had made it easily possible for innocent purchasers for value to be imposed on, he made no effort to protect them. Fortunately for the Florida purchasers, they had the protection of the statute above referred to, which appellee Rowsey had never complied with.
Our conclusions in this case are strongly supported by the opinion of Mr. Justice Buford in the case of Lee et al. v. Bank of Georgia, 159 Fla. 481, 32 So.2d 7, and the opinion of Mr. Justice Barns in Woods v. Thompson, 159 Fla. 112, 31 So.2d 62, 63. In the opinion in the last cited case, a principle which has frequently been applied in Florida is quoted, as follows: "When one of two innocent parties must suffer through the act or negligence of a third person, the loss should fall upon the one who by his conduct created the circumstances which enabled the third party to perpetrate the wrong or cause the loss." In this latter case the opinion said that the court took into consideration the fact that "the subject matter was an automobile capable of being speedily moved to any part of the country," etc.
For the reasons above pointed out, the judgment appealed from is reversed and the case remanded for entry of a judgment, consistent with the foregoing opinion.
Reversed and remanded.
ADAMS, C.J., and TERRELL and CHAPMAN, JJ., concur.