392 So.2d 971 (1981)
Beuleah S. PASEKOFF and Richard L. Grinberg, As Personal Representatives of the Estate of Harold Pasekoff a/K/a Harold J. Pasekoff, Deceased, Appellants,
v.
Madeline KAUFMAN, Sylvia Engels, Deverah Hurwick and Judith Pasekoff Kay, Appellees.
No. 79-2372.
District Court of Appeal of Florida, Third District.
January 13, 1981.
Rehearing Denied February 13, 1981.
*972 Horton, Perse & Ginsberg and Mallory H. Horton, Miami, for appellants.
Wolff & Friedman and Julian R. Benjamin, Miami, for appellees.
Before HENDRY, SCHWARTZ and NESBITT, JJ.
SCHWARTZ, Judge.
The proper resolution of this intrafamily dispute over an interest in realty is complicated by the relative intricacy of the operative facts and the inadequacy of the pleadings to reflect the parties' respective positions. We have concluded, however, that the judgment under review, which in effect quieted title to the property in the heirs of Frances Pasekoff over the conflicting claims of the estate of her son, Harold Pasekoff, cannot stand.

Facts and Proceedings Below
The case involves the title to an undivided half-interest in now-improved property in Dade County. (At all pertinent times, the other half has been owned, without dispute, by H.I. Kopelman and his wife.) The 50% interest now in question was conveyed by Sylvia [Pasekoff] Engels, and Burton Engels, her husband, by a warranty deed[1] dated December 3, 1956, to a grantee described as the "Sam Pasekoff Company ... of the County of Allegheney [sic][2] in the State of Pennsylvania."
The grantee, "Sam Pasekoff Company," was a partnership engaged in the produce business in Pittsburgh, Pennsylvania. As was indisputably established below, in 1956 and for several years before, the business was operated and owed as co-partners by Sam Pasekoff and his son, Harold.[3] That *973 situation continued until April 1, 1958, when Sam conveyed his entire interest in the partnership and its assets to Harold.[4] In accordance with this agreement, Harold thereafter owned and ran the "Sam Pasekoff Company" until shortly before his death in 1973.[5] Sam Pasekoff himself died in 1965, leaving his entire estate to his wife Frances, who passed away in 1971. Frances' will devised all her property in equal shares to her five children, Harold and the four daughters, including Sylvia Engels, who are the present appellees.
As for the interest in the Dade County realty, the record shows that it was actively managed by the other half owner, Kopelman, who, unlike the Pasekoffs, resided in the area. From 1956 on, half of the net rental proceeds were forwarded to the Sam Pasekoff Company, which, in turn, bore half of the taxes and other expenses. Subsequent to April 1, 1958, both the income and costs were duly reported as such, in tax returns and otherwise, by Harold Pasekoff while he was the sole owner of the "Sam Pasekoff Company" and, after his death, by his estate. On the other hand, the Florida property was not included as an asset of the estate of either Sam or Frances Pasekoff,[6] and none of the daughters asserted any claim to the property until their response to the proceedings below.
In 1976, the representatives of Harold's estate brought the present action  *974 which they apparently believed would be an unopposed formality  against his four sisters to quiet title to the property in question. The complaint alleged that Harold had acquired ownership of the entire half-interest by adverse possession under color of title. See, § 95.16, Fla. Stat. (1975). This allegation, in common with all of the plaintiffs' later-presented theories, did not attempt to distinguish between Harold's ownership of one-half of the 50% interest in question under the 1956 deed as a then-one-half owner of the grantee-partnership, and the interest in the partnership he allegedly received from his father in 1958. Indeed, Harold's estate has never straightforwardly asserted his ownership of half of the 50% interest in question simply as the legal or equitable titleholder of that half. Instead, the complaint seemed to contend that the plaintiffs' "color of title" to the whole 50% interest was based on the 1958 transaction. The defendants happily joined issue on this all-or-nothing basis. They denied the viability of the 1958 "transfer" and the adverse possession claim and counter-claimed for ejectment of Harold's estate on the basis of their own title to the half-interest stemming from the 1956 deed, deraigned from Sam through their mother, Frances. In the skirmishes over the pleadings which followed, the plaintiffs amended their complaint to include a count based on adverse possession without color of title, Section 95.18, Florida Statutes (1975), and the court dismissed the original "with color of title" claim for failure to state a cause of action.[7] After these events, and extensive discovery, the plaintiff-estate moved in March, 1978 for leave to file a third amended complaint to include a count for the imposition of a trust in the estate's favor upon the entire one-half interest in question. The trial judge denied the motion.
When the case went to non-jury trial 18 months later, the only remaining count in the complaint was the one based on adverse possession not under color of title. At the conclusion of the plaintiffs' case, which developed the facts already stated, the court granted an involuntary dismissal of this claim.[8] Immediately thereafter, and without additional testimony, the defendants moved for and were granted a summary judgment on their counterclaim. The court thereupon entered a single final judgment dismissing the plaintiffs' action with prejudice and declaring each of the four daughters (and Harold's estate) to be the owners of 20% of the disputed interest  that is, 10% of the parcel as a whole. In addition, the defendants were awarded a money judgment plus interest in an agreed amount which represented the daughters' share of the profits of the property collected by Harold and the estate after their mother's death. The estate appeals. For two reasons, we reverse.

Error to Enter Judgment for Defendants Because of Failure to Negate Harold's Interest As Co-Partner of Sam Pasekoff Company
As we have seen, the appellees' claim to the property  like the plaintiffs'  is derived from the common source of the 1956 deed to the Sam Pasekoff Company of Allegheny County, Pennsylvania. In this situation, it was incumbent upon the counter-claimants to establish that they "acquired title from the common source." [e.o.] Nissim Hadjes, Inc. v. DiCostanzo, 197 So.2d 602, 607 (Fla. 3d DCA 1967). See also, Bass v. Ramos, 58 Fla. 161, 50 So. 945 (1909); Florida Finance Co. v. Sheffield, 56 Fla. 285, 48 So. 42 (1909). As to one-half of the interest in controversy, it is clear not *975 only that the appellees did not make this required showing but that, so far as the record presently reflects, title was in fact held by the plaintiff-estate. In 1956, the law in Florida was that, while a partnership could not hold property in the partnership name,[9] "[a] deed made to a firm by the firm name, instead of the individual members of the firm, is not for that reason void. It is a latent ambiguity, that may be explained and supplied by parol." LaFayette Land Co. v. Caswell, 59 Fla. 544, 52 So. 140, 141 (1910). Accord, Cawthon v. Stearns Culver Lumber Co., 60 Fla. 313, 53 So. 738 (1910). In this case, the "parol" testimony clearly established that Sam and Harold each owned 50% of the Sam Pasekoff Company in 1956 and that Harold therefore became the vested owner, at least equitably, of 50% of the partnership's share of the property when the deed was issued. Dineen v. Lanning, 92 Neb. 545, 138 N.W. 759 (1912); Silverstein v. Wolf, 151 A. 482 (N.J. 1930); Murray, Ferris & Co. v. Blackledge, 71 N.C. 492 (1874); see, Loubat v. Nourse, 5 Fla. 350 (1853).
The appellees make two separate contentions, in contradiction to this analysis, to support their claim that Sam Pasekoff was the sole holder of the title under the 1956 deed. Neither has merit. The first is that, as their brief argues, "[t]here was no evidence whatsoever before the court that the Pennsylvania partnership had anything to do with the Florida property." In the light of the overwhelming and undisputed showing to the contrary  not least of which is the deed's specific designation of the grantee as being located in Allegheny County, Pennsylvania  we regard this argument as both specious and disingenuous.[10] The appellees also suggest the Sam Pasekoff's undivided ownership is shown by the fact that Kopelman and Sam, joined by their wives, executed a mortgage on the entire parcel, with Harold as the mortgagee, dated three months before and recorded simultaneously with the deed. The mere execution of a mortgage, however, is no evidence whatever of ownership of the mortgaged property. See, Wagner v. Roberts, 320 So.2d 408 (Fla. 2d DCA 1975), cert. denied, 330 So.2d 20 (Fla. 1976). In no sense, therefore, can the mortgage be regarded as a muniment of title from which the defendants could derive ownership of the entire 50% interest, so as to defeat the rights of Harold as the co-owner of the grantee of record, "Sam Pasekoff Company."[11],[12]
On this basis, the appellants did not establish their entitlement, as a matter of law, to the entire disputed interest in the property. The summary judgment which so held was therefore erroneously entered for this reason alone.[13]

Error to Deny Amendment to Raise Constructive Trust Claim
The proposed third amended complaint sought to impress a trust on the property based upon the allegations that (a) *976 in the 1958 dissolution and "gift," Sam intended to and avowedly had conveyed his entire interest in the Florida property to Harold and (b) although the transfer was ineffective to pass legal title,[14] from that time forward, Harold treated the interest as his own, collecting the profits and paying the expenses totally without complaint from Sam, Frances, or the appellees, until the suit was filed long after Sam had died. This proposed additional count stated a cause of action under the equitable estoppel theory applied in Chamberlain v. Chamberlain, 115 Fla. 21, 155 So. 136 (1934). Accord, Woodward v. Kitchen, 112 So.2d 272 (Fla. 1st DCA 1959); see also, Walker v. Senn, 340 So.2d 975 (Fla. 1st DCA 1976); Binz v. Helvetia Florida Enterprises, 104 So.2d 124 (Fla. 3d DCA 1958).
We conclude, moreover, that the trial court abused its discretion in denying the motion to amend the complaint so as to reflect this theory. The very terms of Fla. R.Civ.P. 1.190(a) provide that "leave [to amend] shall be given freely." The proffered amendment was based on the same transactions and claim for relief involved in the plaintiffs' earlier pleadings and merely enunciated an additional legal theory to support their action. See, Knipp v. Weinbaum, 351 So.2d 1081 (Fla. 3d DCA 1977), cert. denied, 357 So.2d 188 (Fla. 1978); David Miller Dist. Co. v. Florida National Bank, 342 So.2d 856 (Fla. 1st DCA 1977). Since all of the factual allegations had been revealed in earlier discovery, the appellees could not have been, and, indeed make no claim that they were surprised by the contents of the amendment. Furthermore, when the motion was made, the case had not yet been set for trial, which did not take place until a year and a half later. Finally, although there had been several previous amendments, there was no indication that the "privilege to amend" had been or was being abused. See, Garvie v. Cloverleaf, Inc., 136 Fla. 899, 187 So. 360 (1939); Richards v. West, 110 So.2d 698 (Fla. 1st DCA 1959). Under all these circumstances, there was no acceptable reason for the court's refusal to permit the amendment in question. Plyser v. Hados, 388 So.2d 1284 (Fla. 3d DCA 1980), and cases cited; Enstrom v. Dixon, 354 So.2d 1251 (Fla. 4th DCA 1978).

Conclusion
For the foregoing reasons, the judgment under review is reversed and the cause is remanded for further proceedings not inconsistent herewith. After remand, the pleadings should be recast, see, Georgia-Pacific Corp. v. Squires Development Corp., 387 So.2d 986 (Fla. 4th DCA 1980), so as to permit the parties to join issue as to the plaintiffs' rights to the property in question as they specifically relate to Harold's status as a partner in the Sam Pasekoff Company, and to reflect the claim embodied in the proposed third amended complaint.
Reversed and remanded.
NOTES
[1] While the deed indicated that it conveyed the entire interest in the property, a subsequently recorded affidavit of the grantors corrected the deed to reflect that only a half-interest was involved.
[2] The city of Pittsburgh is located in Allegheny County, Pennsylvania.
[3] Among many other things which demonstrate this fact, the record shows that, on December 21, 1953, Sam and Harold signed a "partnership agreement," which provided:

THAT the partnership heretofore existing between the parties hereto in the operation of a produce business, with offices at the Catanzaro Building, 21st and Smallman Streets, Pittsburgh, Pennsylvania, under the name of SAM PASEKOFF CO., is hereby continued for a term expiring December 31, 1958.
EACH of the partners has a one-half interest in said partnership business and in all the assets thereof; each as heretofore shall be entitled to one-half of the net profits of said partnership business and each shall bear one-half of the losses thereof.
.....
UPON the death of Samuel Pasekoff during the continuance of the partnership, his net interest therein shall become vested in the said Harold J. Pasekoff unconditionally, without liability on the part of the said Harold J. Pasekoff to pay any consideration or compensation therefor. Upon the death of Harold J. Pasekoff, the partnership shall be dissolved and shall be liquidated by Samuel Pasekoff, the surviving partner, and the net proceeds shall be divided equally between Samuel Pasekoff and the estate of Harold J. Pasekoff.
[4] A document executed by Sam and Harold Pasekoff, entitled "Dissolution of Partnership and Declaration of Gift," stated:

WHEREAS the said SAMUEL PASEKOFF and HAROLD J. PASEKOFF are at present and have, in the past, been engaged in the wholesale produce business, as partners trading under the firm name of SAM PASEKOFF COMPANY and doing business at the Catanzaro Building, 21st & Smallman Streets, Pittsburgh 1, Pennsylvania; and
WHEREAS the said SAMUEL PASEKOFF is no longer dependent on said business for his livelihood; and
WHEREAS HAROLD J. PASEKOFF has faithfully continued in the operation of said business in fulfillment of an oral promise made in prior years wherein SAMUEL PASEKOFF had agreed that he, the said SAMUEL PASEKOFF would make a gift of his interest in said business to HAROLD J. PASEKOFF provided the said HAROLD J. PASEKOFF continue in the operation and success of said business;
NOW THEREFORE, it is mutually agreed between the parties that the partnership heretofore existing between SAMUEL PASEKOFF and HAROLD J. PASEKOFF pursuant to an Agreement of Partnership entered into on the 21st day of December 1953 under the above name and style is hereby dissolved and ended and the said SAMUEL PASEKOFF hereby declares that he gives, grants and transfers all his interest in the aforementioned partnership, including all the stock, fixtures, accounts and all other assets of said firm of SAM PASEKOFF COMPANY, of every nature and kind whatsoever, including the leasehold interest on the premises above, to have and to hold the said goods, chattels and interest unto HAROLD J. PASEKOFF, his heirs, executors, administrators and assigns, to and for his own proper use forever.
IT IS understood and agreed between the parties that HAROLD J. PASEKOFF is to pay all the indebtedness of the firm of SAM PASEKOFF COMPANY and to hold SAMUEL PASEKOFF free from any liability therefore. SAMUEL PASEKOFF hereby agrees that he will permit HAROLD J. PASEKOFF to continue the use of his name in the style of the said firm.
[5] At that time, Harold sold the Pennsylvania assets of the company to an employee.
[6] The appellees point out, however, that Harold was the personal representative of both estates.
[7] We find no error in this ruling since the 1958 dissolution of partnership agreement, see note 4 supra, could not be effective as conferring "color of title" because it was not recorded, see § 95.16(1); 2 Fla.Jur.2d Adverse Possession § 8 (1977), and contained no description of the property at all. See, Moore v. Musa, 198 So.2d 843 (Fla. 3d DCA 1967); 2 Fla.Jur.2d, supra, § 11.
[8] If only because there was no showing that Harold or his estate had returned the property for taxes as required by Sec. 95.18(1), Fla. Stat. (1975); Meyer v. Law, 287 So.2d 37 (Fla. 1973), this ruling was concededly correct and is not challenged on appeal.
[9] This rule was changed by the Uniform Partnership Act, enacted in Florida in 1973. See, § 620.595(3), Fla. Stat. (1979).
[10] Counsel's contention at oral argument was that the grantee "Sam Pasekoff Company," was or may have been an entity which was in the produce business in Florida and which was owned either by Sam individually or by Sam and his wife, as partners. There is not a shred of evidence to support this assertion.
[11] In any case, Sam's execution of the mortgage is not inconsistent with his 1956 ownership, as the other co-partner of 25% of the property. The mortgage may properly be deemed therefore to have secured only that interest.
[12] We note that the grantors of the deed were Sam's daughter and her husband, a lawyer who had worked for the Sam Pasekoff Company in Pittsburgh and who drew the instrument. Surely if the parties intended that Sam, individually, or Sam and his wife should be the owners, rather than the "Company," they knew how to and would have accomplished that purpose in their description of the grantee.
[13] Since the issue has been raised directly by neither side, we do not treat the possible effect, in and of itself, of the 1958 transfer of all of Sam's interest in the partnership assets to Harold, as it concerns their respective equitable rights and those of their heirs to the disputed property. See, Shanks v. Klein, 104 U.S. 18, 26 L.Ed. 635 (1881).
[14] See, Section 689.01, Florida Statutes (1977).