406 So.2d 496 (1981)
Joan Claire Egan HOLLAND, Appellant,
v.
Eugene William HOLLAND, Appellee.
No. 80-860.
District Court of Appeal of Florida, Fifth District.
October 28, 1981.
Rehearing Denied December 7, 1981.
*497 James F. Spindler, Jr., Crystal River, for appellant.
Wayne L. Rubinas of Pattillo, MacKay & McKeever, P.A., Ocala, for appellee.
FRANK D. UPCHURCH, Jr., Judge.
This is an appeal from a final judgment of dissolution of marriage. In her petition for dissolution, appellant/wife asked the court to make a determination of the property rights of the parties. Apparently, appellant's only major asset was her joint ownership of the parties' condominium, the rest of the property being titled solely in the name of the appellee/husband.
In response, the husband contended that all property rights had been determined by the parties' antenuptial agreement. The wife, however, argued that the agreement was void because it was improperly executed and the husband had failed to make a full disclosure of his assets. In resolving the issue of the agreement's validity, the trial court did not make findings of fact but stated simply, "The court considered the pre-nuptial agreement in the making of this award, and has given it the weight it deserved."
The antenuptial agreement provided as follows:
1. That the proposed marriage shall not constitute a revocation of any wills or codicils heretofore made by either of the parties hereto and any such wills which may have been made by the parties to this agreement shall continue in full force and effect notwithstanding the proposed marriage until altered, revoked or amended according to law.
2. Each of the parties hereto does hereby agree that he or she will make no claim against the estate of the other and each party hereto relinquishes any rights which he or she may have in the estate of the other either by intestacy, right of election or otherwise.
The agreement further stated that:
It is the intention of this instrument that the rights of each of the parties hereto to obtain, hold and dispose of real, personal and intangible property shall be the same as if each of the parties hereto had remained unmarried.
The court ordered that all property held in joint names remain as joint ownership and that all property in each individual name follow the title with no claim of the other party being recognized. This division seems to effectuate the intention of the agreement that the parties hold and dispose of property as though each had remained unmarried. Even though the final judgment appears to enforce the antenuptial agreement, we have concluded that the result would have been the same whether the agreement was valid or invalid.
Under our present laws, both the husband and wife are entitled to control and manage his or her separate property without joinder or consent of the spouse[1] in *498 all respects as if the parties were unmarried. See § 708.08, Florida Statutes (1979), providing for the right of married women to hold separate property. Property titled solely in the husband's name or in the wife's name remains unaffected by a dissolution of marriage unless awarded to the other spouse as lump sum alimony. See Harder v. Harder, 264 So.2d 476 (Fla.3d DCA 1972). Property held as tenants by the entirety is converted to a tenancy in common upon dissolution. § 689.15, Fla. Stat. (1979).
In the present case, the judgment merely followed the law. The parties' condominium formerly held as a tenancy by the entirety was converted to a tenancy in common. Property titled solely in the husband's name remained his separate property after the dissolution. Thus, regardless of the validity of the antenuptial agreement, the property disposition in the final judgment was proper.[2]
The second question, whether the court's granting of four years of rehabilitative alimony was an abuse of discretion, is more difficult.
For an award of rehabilitative alimony to be proper, the evidence must show a potential or actual capacity for self-support. See Wagner v. Wagner, 383 So.2d 987 (Fla. 4th DCA 1980); Yohem v. Yohem, 324 So.2d 160 (Fla. 4th DCA 1975); Schwartz v. Schwartz, 297 So.2d 117 (Fla. 2d DCA 1974); Reback v. Reback, 296 So.2d 541 (Fla. 3d DCA 1974).
The wife is forty-three years old and has a tenth grade education. Her only employment was as a telegram clerk prior to her marriage sixteen years ago. She possesses no marketable skills or talents. She is generally in good health but occasionally suffers lower back problems requiring medical care. She also has poor circulation in her legs which prevents her from standing for long periods. She also has the care and custody of the parties' eleven year old daughter. There was no showing of any potential or actual capacity for self-support. Therefore, we conclude that it was error for the court to have awarded rehabilitative rather than permanent alimony. See Colucci v. Colucci, 392 So.2d 577 (Fla. 3d DCA 1981), G'Sell v. G'Sell, 390 So.2d 1196 (Fla. 5th DCA 1980) and Garrison v. Garrison, 380 So.2d 473 (Fla. 4th DCA 1980).
The disparity between the financial situation of appellant and appellee is marked. Appellant's estate consists almost entirely of her interest in the jointly owned home and her personal effects. In contrast, appellee has a substantial estate. According to his financial affidavit submitted for the dissolution proceedings, he has an estate valued at nearly one-half million dollars. A financial statement in support of a loan application one year earlier suggests that his estate may approach one million dollars in value. While we recognize an understandable tendency to exaggerate one's assets when securing a loan and to minimize them when involved in a marital dispute over those assets, the discrepancy here is remarkable and warrants further inquiry. Appellee, whose present occupation is given as a charter boat captain, admits to income of only $26,000 per year. His employment history reflects varied entrepreneurial interests depicting a man of substantial skill and experience in business and financial circles. It seems that appellee could meet the reasonable needs of appellant with minimum impairment of his lifestyle.
We also note that the antenuptial agreement challenged by the wife does not in any way limit her right to claim alimony or even address the question. The court was thus not restricted by the agreement from awarding such alimony in the amount or type as may be appropriate.
Appellant, however, contends that rather than rehabilitative alimony the trial court should have awarded her lump sum alimony to effect an "equitable distribution" *499 of the husband's property. She suggests that a division of the "marital" property in which she receives approximately one-third of the husband's estate is equitable and just as such an award would be comparable to her dower expectancy had she remained married. Appellant argues that Klaber v. Klaber, 133 So.2d 98 (Fla. 2d DCA 1961), indicates that appellate courts have equated the division of marital assets upon dissolution with the division of marital assets upon death of one of the parties. While that argument might be asserted in a proper case,[3] such is not the case here. Clearly, the antenuptial agreement is sufficient to release any claim which appellant might have exerted against the estate of appellee upon his death had they remained married. Section 732.702, Florida Statutes (1979), provides that the rights of a surviving spouse may be waived by a "written contract, agreement, or waiver signed by the waiving party" and that no disclosure shall be required for an agreement, contract, or waiver executed before marriage. We therefore disagree with appellant's contention that the trial court was empowered to divide the assets of the marriage in a similar fashion as they would have been divided had the marriage been terminated by the death of appellee rather than by dissolution of marriage.
We do not imply, however, that the trial court did not have authority to make an award of lump sum alimony. As was pointed out in Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980), the trial court has broad discretion in granting lump sum alimony consistent with the statutory mandate of section 61.08, Florida Statutes (1979), to consider any factor necessary to do equity between the parties.
The third point raised by appellant was whether the trial court's award of child support constituted an abuse of discretion.
We cannot say that the award was an abuse of discretion under the definition of judicial discretion given in Canakaris. Appellant contends that she had planned on a substantial award of appellee's property from which she would derive sums to assist in her daughter's care. Because this expectation was thwarted by the court, she asserts that the amount she asked for and was awarded is inadequate. Child support in the amount of $100 per week, medical and dental expenses, and the use of the marital home until the child is eighteen years were provided. In the absence of proof of a greater need, we cannot say this amount is inadequate. Should the needs of the child increase, appellant may petition the court at a later date to modify the award. See § 61.13, Fla. Stat. (1979).
We therefore AFFIRM as to the award of child support but REVERSE the award of periodic alimony and REMAND for hearing on the amount of permanent alimony to be awarded wife upon reexamination of the parties' needs and abilities.
AFFIRMED in part and REVERSED in part.
SHARP, J., concurs.
COWART, J., concurs in part and dissents in part with opinion.
COWART, Judge, concurring in part and dissenting in part:
I agree with those portions of the majority opinion which affirm the trial judge and dissent from that portion that reverses. Specifically, I agree with the trial court's award of child support and with its disposition of the property aspects of this dissolution of marriage as being consistent with the parties' prenuptial agreement and the trial court's discretion under Canakaris. I do not agree that the trial court abused the broad discretion he exercises, as recognized in Canakaris, by making an award of four years rehabilitative alimony rather than an award of permanent periodic alimony. Nor do I agree with the majority opinion's suggestion that a lump sum alimony award would be appropriate in this case in view of *500 the prenuptial property settlement agreement.
Canakaris, at page 1200, explains that in domestic relations law the term "special equity" properly refers only to some vested property title or lien interest existing in one spouse as against the other but that the term had in the past been misapplied and used to describe a distribution in the nature of a lump sum alimony award to avoid the statutory prohibition against awarding alimony to an adulterous wife. To avoid the confusion resulting from the use of the same term to denote two concepts Canakaris suggests that the term "special equity" should not be used when considering lump sum alimony.
Before Canakaris, the term "lump sum alimony" had been generally used to describe only the single payment settlement of an alimony right and obligation. It related to alimony and support and was considered something like a lump sum payment settlement of a workers' compensation claim[1] and allowed only under special circumstances where it served a reasonable purpose.[2] To justify a lump sum alimony award many cases required a positive showing of necessity[3] as where the husband had no ability to pay periodic alimony.[4]Canakaris takes the name of this very useful concept and renders its duplicitous by additionally using it to describe a tool with which to distribute and divide property rights, stating "a judge may award lump sum alimony to insure an equitable distribution of property acquired during the marriage... ." Canakaris, 382 So.2d at 1201.
Alimony inherently refers to a support concept, which in turn normally contemplates the parties' relative rights to income, such as that as would be shown in an income statement (profit and loss statement), while resolution of property rights in a dissolution can be likened to a partition of assets shown on a marital balance sheet. Disregarding these conceptual distinctions leads to confusion and error.
Here the majority opinion, after concluding that the prenuptial agreement was effective to prevent the trial judge from dividing the assets of the marriage (or that the legal result of the trial judge's refusal to distribute the assets is consistent with the prenuptial agreement) suggests, however, that the trial judge could have considered appellee's "substantial estate" and have made a Canakaris lump sum alimony award to divide the marital property. Since the Canakaris type lump sum alimony award is essentially a division and distribution of property, its use in this case would accomplish the same purpose  a distribution of assets  which the majority seems to hold is barred by the prenuptial agreement.
Furthermore, I disagree with the majority's suggestion that, in a proper case, the amount of an equitable distribution of marital property should be determined with reference to the wife's dower (elective share) expectancy. The case which the appellant relies on for this proposition, Klaber v. Klaber, 133 So.2d 98 (Fla. 2d DCA 1961), does not support her argument. In Klaber, the court approved the trial court's division of the marital property, but noted in passing that the wife's share was not clearly inadequate, since it roughly coincided with her dower expectancy, had she remained married. Klaber should not be read to hold that a trial judge must, as a maximum or minimum, award a share of marital property equal to the elective share. The amount of the elective share is irrelevant to the determination of alimony or an equitable property distribution, and thus should not *501 be considered at all in a dissolution proceeding. See Ryan v. Ryan, 277 So.2d 266 (Fla. 1973).
NOTES
[1] The question of restrictions on the conveyance of homesteads is not involved in the case.
[2] On appeal, the wife has claimed a special equity in her husband's separate property; however, the record indicates that she neither alleged nor proved a special equity in the court below and thus this issue has been waived. See Price v. Price, 389 So.2d 666 (Fla. 3d DCA 1980).
[3] But see Ryan v. Ryan, 277 So.2d 266, 269 (Fla. 1973) wherein the court stated: "Dower is not a vested right. We have said that because of its defeasible nature dower is not to be given consideration in divorce or dissolution of marriage proceedings."
[1] See § 440.20(12), Fla. Stat. (1979).
[2] For the general view, see the discussion of Lump Sum Alimony in The Florida Bar Continuing Legal Education Committee lecture outline entitled "Current Trends in the Alimony, Child Support and Property Issues in Dissolution Proceedings [etc.]" (copyrighted 1978).
[3] See, e.g., Simpson v. Simpson, 372 So.2d 526 (Fla. 4th DCA 1979); Judge v. Judge, 370 So.2d 833 (Fla. 2d DCA 1979); Reid v. Reid, 365 So.2d 1050 (Fla. 4th DCA 1978); Meredith v. Meredith, 352 So.2d 72 (Fla. 4th DCA 1977), cert. granted 366 So.2d 425 (Fla. 1978).
[4] Lee v. Lee, 365 So.2d 742 (Fla. 4th DCA 1978).