UNITED STATES of America, Plaintiff,

v.

ONE PARCEL OF REAL ESTATE AT 3229 S.W. 23RD STREET, MIAMI FLORIDA, etc. Defendant.

No. 88–834–CIV.

United States District Court, S.D. Florida.

June 26, 1991.

---

Michele Crawford, Asst. U.S. Atty., Miami, Fla., for plaintiff.

Kathleen M. Williams, Scott L. Pestcoe, Morgan, Lewis & Bockius, Miami, Fla., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

MARCUS, District Judge.

This is a civil forfeiture action brought by the United States against the Defendant real estate, comprised of a single family home and adjacent structure on a parcel of land at 3229 S.W. 23rd Street, Miami, Florida, along with all appurtenances and improvements to the property. This forfeiture complaint, brought by Plaintiff pursuant to Title 21, United States Code, § 881(a)(7) alleges in essence that the real

property together with the improvements was used to facilitate an illegal drug transaction and is thereby forfeitable to the United States. Jurisdiction is predicated on Title 28, United States Code, §§ 1345, 1355 and 2461.

A verified claim was filed by Maria Victoria Lindner–Lopez. The Claimant has alleged, among other things, that the Government has failed to establish probable cause that the subject property had a substantial connection to a prohibited narcotics transaction; that the Claimant has established by a preponderance of the evidence that she is an innocent owner who did not know of the property's connection to drug trafficking; and, finally, that the Government entered into a binding and enforceable agreement between Drug Enforcement Administration (DEA) Special Agent Gaddis and Ricardo Lopez, the Claimant's husband, whereby the Government purportedly agreed to refrain from seeking forfeiture of the real estate at issue in return for the cooperation of Lopez.

A bench trial was conducted by the Court, at which time the parties presented the testimony of witnesses and documentary evidence. Based on a thorough review of the pleadings, testimony, record and upon argument of counsel, we conclude that the parcel of real estate at issue, along with all appurtenances and improvements are subject to forfeiture to the United States. Pursuant to Fed.R.Civ.P. 52, we make the following Findings of Fact and Conclusions of Law.

## I. FINDINGS OF FACT

1. The parties have stipulated to the following facts:

(a) The Defendant real estate is more particularly known and described as the east Half of Lot 76 and all of Lot 77 in Block 4 of Miami Suburban Acres, according to the plat thereof, recorded in Plat Book 4 at page 73, of the Public Records of Dade County, Florida;

(b) On March 29, 1988, agents of the Drug Enforcement Administration conducted a search of the Defendant residence;

(c) Ricardo Lopez and Claimant, Maria Victoria Lindner–Lopez were married on February 13, 1981;

(d) From January of 1982 until January of 1989, Ricardo Lopez and Claimant lived at Defendant residence. Claimant continues to live at Defendant residence with her and Ricardo Lopez' minor child, Ricardo Mario Lopez, age three;

(e) On March 28, 1988, Ricardo Lopez, was arrested by agents of the Drug Enforcement Administration. A subsequent indictment charged Lopez with conspiracy to possess cocaine with intent to distribute in Count I and possession with intent to distribute in Count II, in violation of federal narcotics laws. On August 22, 1988, Ricardo Lopez pled guilty to Count II of a two-count indictment charging him with possession with intent to distribute at least 500 grams of cocaine, in violation of Title 21 U.S.C. § 841(a)(1);

(f) Subsequent to his arrest and plea of guilty, Ricardo Lopez was interviewed by Special Agent David Gaddis of the Drug Enforcement Administration.

2. DEA Special Agent David Gaddis testified at length about the investigative events leading up to the instant forfeiture action. We found Gaddis, an experienced agent, to be a credible witness and we specifically credit his testimony.

Gaddis testified that on March 29, 1988, he was investigating a possible drug trafficking organization in an undercover capacity, and that he was utilizing the services of a confidential informant ("CI"). The CI arranged a meeting at about 2:00 p.m. on March 29, 1988 at the corner of 27th Avenue and 23rd Street, in Miami. At the meeting, Gaddis met with the CI and Oscar Keith Simmonds to discuss a drug deal. Simmonds told Gaddis and the CI that he "had people" who could supply some ten (10) kilograms of cocaine to Gaddis. Simmonds added that "his people" were ready to supply the cocaine but that one of "his people" needed to see the money first. Sometime later, Michael Bay met with Gaddis and was shown by Gaddis some $100,-000 in U.S. currency. Gaddis, Bay and the

CI agreed that Bay and the CI would return to a home at 2300 S.W. 31st Avenue in order to contact the source of the cocaine. Also involved in the transactions were Cathy Ferris and Michael Ligdis. A price of $16,000 per kilogram was agreed upon.

It was further agreed that the CI would inspect the cocaine at the home at 2300 S.W. 31st Avenue and contact Gaddis thereafter, who would wait with the money. Bay and the CI returned to the location at 2300 S.W. 31st Avenue. Thereafter, Bay and Ligdis went to the Lopez home at 3229 S.W. 23rd Street in order to obtain one kilogram of cocaine in connection with the planned sale of cocaine to undercover agent Gaddis. Bay and Ligdis were observed exiting their car, and entering the Defendant home empty-handed. They were in the home for only a short time, approximately one minute, and they exited soon thereafter. Notably, Ligdis was observed carrying a rectangular object, yellow-green in tint, which was subsequently found to contain one kilogram of cocaine.

Thereafter, Bay and Ligdis returned to the Ferris residence at 2300 S.W. 31st Avenue, at which time the package containing cocaine was shown to the CI, who simulated an inspection of it. The CI then left the home and gave DEA agents a pre-arranged arrest signal. Ligdis, Ferris, Simmonds and Bay were arrested at the home and a kilogram of cocaine was seized.

3. DEA agents then approached the Lopez residence at 3229 S.W. 23rd Street, announced they were police, and placed Ricardo Lopez under arrest. Also found in the home were a child and a maid. Lopez was given *Miranda* warnings and subsequently consented to the search of his home by the agents. DEA agents discovered and seized a firearm on the counter of the kitchen in the subject residence. A search of the master bedroom also uncovered a package of marijuana. Some 100 grams of marijuana was found in a closet in the master bedroom in a plastic garbage-type bag, in a wooden box. The opaque plastic bag was visibly hanging out of the wooden box, which was, in turn, found on top of the master bedroom closet shelf.

Agent Gaddis testified that the doors to the master bedroom and the closet were open and that the smell of marijuana permeated the bedroom and the closet. He described the odor as being sweet and pungent, and opined that the odor was so significant that he believed it was present some twenty-four hours. Gaddis also stated that the closet contained both men's and women's clothing and shoes and was typically arranged. The marijuana was seized by the case agents.

4. In another bedroom of the house, which appeared to be used as a study, the DEA agents seized from a desk drawer a cocaine "rock," a knife, and a strainer with residue. Also found was a quantity of cocaine powder discovered wrapped in paper and inserted in a passport belonging to Ricardo Lopez. These items too were seized. Subsequent laboratory tests confirmed that the items seized included marijuana and cocaine.

5. Ricardo Lopez entered a plea of guilty to a count which charged him with possession with intent to distribute at least 500 grams of cocaine, in violation of Title 21, U.S.C. § 841(a)(1), on August 22, 1988. Subsequently, Gaddis met with Lopez pursuant to Lopez' statement that he had information to provide to DEA. Lopez expressed concern about the forfeiture of his property. No promises were made by Gaddis to Lopez. Gaddis told Lopez that he would evaluate Lopez' information and then consider possibly "recommending" to the United States Attorney that he consider the information in connection with sentence and forfeiture issues. Gaddis specifically testified that he did not guarantee (nor could he guarantee) Lopez that his home would not be forfeited to the United States. We are satisfied and find specifically that no promise, binding or otherwise, was made by Gaddis to the effect that the Lopez home would not be forfeited if he cooperated with the Government. On November 29, 1988, Lopez was sentenced to five years in jail, to be followed by a four-year term of supervised release.

6. Ricardo Lopez and the Claimant were married on February 13, 1981. From Janu-

ary 1982, months after the marriage, until January 1989, Lopez and the Claimant lived at the Defendant residence. The Claimant continues to live there with her minor child and with Lopez' relatives. In January 1982, the home was owned by Lopez's grandmother, Victoria Modesta Hernandez. On May 31, 1983, Hernandez quitclaimed the defendant property to "Ricardo Lopez a married man." Title to the property was placed only in the name of Lopez. The Claimant is not named as a grantee on the deed. On May 31, 1986, the Claimant and Ricardo Lopez obtained a mortgage on the residence. The Claimant and Lopez signed as borrowers. Mortgage payments were made from funds held in the Lopez' joint bank account.

## II. CONCLUSIONS OF LAW

1. Title 21 U.S.C. § 881(a)(7) mandates the forefeiture of any real property when there is probable cause to believe that the property was used to facilitate a violation of the federal narcotics laws, 21 U.S.C. § 802 *et seq*, punishable by more than one year's imprisonment. The government bears the burden of establishing probable cause. *United States v. One 1980 Bertram 58' Motor Yacht*, 876 F.2d 884 (11th Cir.1989); *United States v. $4,255,625.39*, 762 F.2d 895, 903 (11th Cir.1985). Probable cause for forefeiture is defined as "reasonable ground for belief of guilt, supported by less than prima facie proof, but more than reasonable suspicion." *United States v. A Single Family Residence*, 803 F.2d 625, 628 (11th Cir.1986); *United States v. $364,960.00*, 661 F.2d 319, 323 (5th Cir. Unit B 1981).

■ 2. In this case the government has established probable cause to believe that the suspect property was used to store narcotics and to facilitate a narcotics transaction. We are satisfied, on the record before us, that a substantial nexus between the subject property and a prohibited narcotics transaction has been established. To begin, the government has likely proven that Bay and Ligdis obtained one kilogram of cocaine from Lopez, and the transfer of cocaine from Lopez was effected in the subject residence. Bay and Ligdis were seen entering the residence empty-handed and leaving soon thereafter carrying a package subsequently identified as containing one kilogram of cocaine. Notably, the transfer occurred precisely in the midst of a deal designed to sell some 10 kilograms of cocaine to undercover agent Gaddis. Moreover, subsequent search of the subject residence disclosed rock and powder cocaine, a strainer and knife, (well-known narcotics paraphernalia), and 100 grams of marijuana in the closet of the master bedroom, which spawned a noticeable sweet and pungent odor. There can be little doubt, we think, that the government has met its burden as to the issue of probable cause.

■ 3. Once the government has established probable cause, as it has done in the instant case, the burden of proof shifts to the Claimant to prove by a proponderance of the evidence a cognizable defense to the forefeiture. *United States v. Four Million, Two Hundred Fifty-five Thousand Dollars*, 762 F.2d 895, 906 n. 24 (11th Cir. 1985); *United States v. $22,287.00, United States Currency*, 709 F.2d 442, 446 (6th Cir.1983).

■ The Claimant relies on the "innocent owner" defense. 21 U.S.C. § 881(a)(7) reads, in pertinent part:

(a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:

(7) All real property,.... which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this title punishable by more than one year's imprisonment, *except that no property shall be forfeited under this paragraph, to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.*

(emphasis added). Upon a review of the evidence presented at trial, we are not satisfied that Claimant has established "innocent ownership" within the meaning of Section 881(a)(7). To begin, in order to estab-

lish an innocent owner defense in a forefeiture action, Claimant must show an "ownership" interest at the time of the commission of the unlawful act. *Claire Manufacturing Co. v. International Ladies Garment Workers' Union*, 667 F.Supp. 230, 247 (D.Md.1987) (holding, among other things, that the claimants had no "standing" to contest the forefeiture and no right to the "innocent ownership" defense because they did not possess a sufficient ownership interest in the property). *See also In re Metmor Financial, Inc.*, 819 F.2d 446, 449 (4th Cir.1987) (observing legislative history which read, "[The Senate Amendment] expands the rights of innocent parties *who own or have an interest recognized by the law* in the seized property...." (emphasis added)). Indeed, the very plain language of section 881(a)(7) requires an individual, claiming to be an innocent owner, to first establish that he or she is in fact an "owner" of the subject property.

In the instant case, Claimant has not established a sufficient ownership interest in the subject property. Also, we believe Claimant has failed to prove standing to contest this forefeiture action because the requirement of standing and "ownership" under 21 U.S.C. § 881(a)(7) essentially boils down to the same question—whether Claimant has shown the requisite interest in the property. *United States v. Five Hundred Thousand Dollars*, 730 F.2d 1437 (11th Cir.1984). The Eleventh Circuit held in *Five Hundred Thousand* that in order to attain standing to contest a forefeiture, one must claim an ownership interest in the seized property sufficient to satisfy the court. *Five Hundred Thousand*, 730 F.2d at 1439 (citing *United States v. $364,960.00 in U.S. Currency*, 661 F.2d 319, 326 (5th Cir. Unit B 1981); *United States v. $15,500.00* 558 F.2d 1359, 1361 (9th Cir.1977)). And the burden of establishing standing in forefeiture proceedings is on the Claimant. *United States v. $364,960.00 in U.S. Currency*, 661 F.2d at 326.

▮ 4. Because there is no federal common law of property, a federal court is obligated to employ applicable state law when determining the nature of a property interest. *See United States v. Yazell*, 382 U.S. 341, 86 S.Ct. 500, 15 L.Ed.2d 404 (1966); *United States v. One Single Family Residence*, 699 F.Supp. 1531 (S.D.Fla. 1988). The applicable Florida law determines what property interest a wife has in property titled solely in her husband's name. *See United States v. Marx*, 844 F.2d 1303 (7th Cir.1988). Claimant argues that pursuant to Florida law, her interest in the property is that of a tenant by the entirety, thereby entitling her to ownership over the entire property. We disagree. In Florida, both husband and wife are entitled to control his or her separate property, without joinder or consent of spouse, in all respects, as if the parties were unmarried. *Holland v. Holland*, 406 So.2d 496 (Fla. 5th DCA 1981). *See also* § 708.08, Florida Statutes (1979), providing for the right of married women to hold separate property.

▮ According to Florida law, a tenancy by the entireties arises only when real property is conveyed to a husband *and* wife; it cannot be implied where no such conveyance existed. *See Doing v. Riley*, 176 F.2d 449, 454 n. 5 (5th Cir.1949) ("Under [Florida law] there may be a tenancy by entireties in both real and personal property; and whether such an estate exists as the result of the acquisition of property *by and in the names of both husband and wife* must be determined by a consideration of the nature and terms of the transaction as portraying the intent of the parties....") Florida case law acknowledges that property titled solely in the husband's name remains his "separate" property and a wife is not entitled to it merely because she was married to him. *Harder v. Harder*, 264 So.2d 476 (Fla. 3d DCA 1972) (property titled solely in the husband's name remains unaffected by a dissolution of marriage unless awarded to the other spouse as lump sum alimony); *Holland v. Holland*, 406 So.2d 496, 498 (Fla. 5th DCA 1981).

In addition, courts interpreting Florida law in bankruptcy proceedings involving personal and real property have held that under Florida law, there must be an intent

to create an estate by entireties, and such intent "ought to be made clearly to appear." *In re Spatola,* 65 B.R. 49, 51 (Bankr.S.D.Fla.1986). The court in *Spatola* ruled that the subject property was not held as an estate by the entireties where the property was issued solely in the husband's name and not as a tenant in entirety with his wife. *Spatola,* 65 B.R. at 51. The court further observed that if the parties actually intended to own the property as tenants in the entirety, the husband could have arranged for the property to be issued to him *and* his wife, but never did so. Accordingly, the court found that no estate by the entirety was ever created.

Similarly, in the instant action the subject property was deeded solely to the husband, Ricardo Lopez, with the identifying phrase, "a married man." The words "a married man" in the deed do not convey any interest, legal or equitable, to his wife; instead, the use of these words conversely indicate that the property was conveyed solely to the grantee husband despite the grantor's notice that the grantee had a wife. In light of these facts and in view of pertinent Florida law, we find that the Claimant is not a tenant by the entireties.

5. Claimant alternatively argues that she has a sufficient ownership interest in the property because, according to her interpretation of Florida law, a constructive trust arises when one either pays for improvements on the property or when an abuse of confidence renders the retention of property by one party unconscionable as to the other party. Claimant argues that because Ricardo Lopez abused their confidential relationship by engaging in prohibited drug activity, and because she made some improvements on the house, a constructive trust exists over the property in her favor.

We reject this argument. In Florida, neither a constructive trust nor a resulting trust arises in favor of a person who has paid no part of the purchase price, even though he or she paid for improvements on the property. *Frambach v. Dunihue,* 419 So.2d 1115, 1117 (Fla. 5th DCA 1982). The court held in *Frambach* that a

person who pays for improvements does not become, in whole or in part, beneficial owner of the property although he or she may be entitled to reimbursement. *Frambach,* 419 So.2d at 1117. In light of this clear ruling on Florida law and because there is no evidence of a promise or agreement to deed a portion of the property to Claimant in return for any improvements, we find that no constructive trust was created under the circumstances of this case. We also note in passing, as will be discussed more fully below, that there is circumstantial evidence in the record indicating that Claimant may have been aware of her husband's illegal activity. At all events, we are not convinced by a preponderance of the evidence that the Claimant's confidence was innocently abused so as to create a constructive trust and afford such an equitable remedy, even if the law provided for it.

6. Furthermore, under Florida law, the mere execution of a mortgage on property is not evidence of any ownership or property interest in that property. *Pasekoff v. Kaufman,* 392 So.2d 971 (Fla. 3d DCA 1981). In fact, the Third District held in *Pasekoff* that according to Florida precedent, a mortgage cannot "be regarded as a muniment of title from which the defendants could derive ownership...." *Pasekoff,* 392 So.2d at 975. *See also Wagner v. Roberts,* 320 So.2d 408 (Fla. 2d DCA 1975), *cert. denied,* 330 So.2d 20 (Fla.1976). Accordingly, the mortgage obtained by the Claimant and Ricardo Lopez on the subject property does not serve to cut off Ricardo Lopez' ownership of the entire property.

7. Although possession of personal property is prima facie evidence of ownership, *Inman v. Rowsey,* 41 So.2d 655 (Fla.1949), the same premise does not apply equally to real property. In fact, legal treatises emphasize that "[the term owner] is most often used to designate the person in whom the legal or equitable title of property rests, as distinguished from a mere occupant or tenant." 42 FLA.JUR.2d PROPERTY § 13 (G. Noland 1983). In addition, the Fifth Circuit has previously declared that "possession is but a frequent incident, not the *sine qua non* of ownership, in the common law or the civil law." *United States v. McClain,* 545 F.2d 988

(5th Cir.1977). Therefore, simply living on the premises with the permission of the owner cannot alone provide a basis for standing and ownership. If such were the case, then a college student would have standing to challenge the forefeiture of a dormitory and a patient would be able to assert a right of ownership over a hospital room. Although Claimant has shown that she lives on the premises with the permission of the owner, she has failed to present other convincing evidence illustrating the requisite "ownership interest" in the property. Possession alone will not do.

■ 8. Moreover, even if Claimant has the requisite standing to contest the forefeiture and a sufficient ownership interest in the property—and on this record she has not established this—she has likewise failed to establish by a preponderance of the evidence that she is an "innocent owner." We recall that to establish "innocent ownership," the Claimant has the burden of proving that she did not know of, nor consent to, the proscribed use of the subject property. *United States v. Four Million, Two Hundred Fifty-five Thousand Dollars*, 762 F.2d 895, 906 n. 24 (11th Cir. 1985). The circumstantial evidence suggests that drugs were found in a number of rooms of the house, including the master bedroom, where according to the testimony of agent Gaddis, the smell of marijuana—a sweet and pungent odor—was said to permeate the room, and was thought to be present for 24 hours. Rock cocaine, a knife and strainer, and cocaine powder were discovered elsewhere. We are not satisfied that Claimant has carried her burden as to "innocent ownership" by a preponderance of the evidence.

9. We believe that on the record presented the United States is entitled to final judgment of forefeiture and the Plaintiff is directed to submit a proposed final order of forefeiture for the signature of the Court within fifteen (15) days of this order.

DONE AND ORDERED.